# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #045

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of September, 2014**, are as follows:

**BY WEIMER, J.**:

2014-C -0090        MAW ENTERPRISES L.L.C., ET AL. v. CITY OF MARKSVILLE, ET AL. (Parish of Avoyelles)

Retired Judge H. Charles Gaudin, assigned as Justice ad hoc, sitting for Justice Jeannette T. Knoll, recused.

For the reasons assigned, we find that Couvillon has not stated a claim for which it can receive legal remedy under the applicable substantive law and that, as a result, the lower courts erred in overruling the City's peremptory exception of no cause of action. The decisions of the court of appeal and the district court are hereby reversed, and judgment is rendered sustaining the City's exception of no cause of action and dismissing Couvillon's claims at its costs. REVERSED AND RENDERED.

CLARK, J., dissents for reasons assigned.
HUGHES, J., dissents with reasons.

SUPREME COURT OF LOUISIANA

NO. 2014-C-0090

MAW ENTERPRISES, L.L.C., ET AL.

VERSUS

CITY OF MARKSVILLE, ET AL.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PARISH OF AVOYELLES*

WEIMER, Justice.[1]

A property owner/lessor filed suit against the City of Marksville seeking to recover damages for the City's denial of a retail alcoholic beverage permit to the lessee of its property. We granted certiorari to review the correctness of the judgment finding liability on the part of the City and awarding damages. In particular, we consider the City's contention that an error occurred in denying its peremptory exception of no cause of action. Finding merit in the City's claim that the plaintiff property owner failed to state a cause of action for interference with a contractual relation caused by the denial of a liquor permit to its lessee, we reverse and render judgment in favor of the City.

## FACTS AND PROCEDURAL HISTORY

On November 30, 2009, MAW Enterprises, L.L.C. ("MAW") entered into an agreement with Couvillon's Payless, Inc. ("Couvillon") for the lease of premises

---

[1] Retired Judge H. Charles Gaudin, assigned as Justice *ad hoc*, sitting for Justice Jeannette T. Knoll, recused.

located at 333 E. Mark Street in Marksville, Louisiana. The property houses a convenience store that has been operated by various parties since 1978. In conjunction with the convenience store operations, a retail alcoholic beverage permit had been issued at that location continuously from 1978 to the effective date of the lease.

According to the terms of the lease, the first ninety days were to be rent free. At the expiration of that period, the parties were to re-evaluate the monthly rent, with a possible increase not to exceed $.05 per gallon of gasoline sold at the fuel pumps located on the premises. Once "any and all legal and/or monetary issues regarding the license to sell liquor/beer on the premises" were resolved, the lease was to "transfer" to a new lease with rental payments of $4,000 per month.

MAW, the lessee, applied for and was granted an occupational license by the City of Marksville ("the City") in December 2009 and commenced operations at that time. An "Application for Retail Alcoholic Beverage Permit" was eventually submitted on March 29, 2010. On April 14, 2010, the City denied the requested permit at a council meeting.

On April 22, 2010, MAW and Couvillon jointly filed a "Petition Seeking Writ of Mandamus and Damages, and Alternatively a Declaratory Judgment" against the City. The petitioners sought a writ of mandamus ordering the City to issue a permit to sell alcoholic beverages to MAW or, in the alternative, a declaratory judgment declaring the municipal ordinance on which the City allegedly based its denial of the permit to be without effect, together with damages and attorney's fees.

In June 2010, while the lawsuit against it was pending, the City granted MAW the requested retail alcoholic beverage permit. Thereafter, on July 2, 2010, MAW

dismissed its claims against the City with prejudice, and the matter proceeded with Couvillon as the sole plaintiff.

The City filed peremptory exceptions of no cause of action and no right of action to Couvillon's claims. Basically, the City argued that Couvillon, with interests arising solely through a lease with MAW which is tied to sales of gasoline and not alcohol, does not have a cause of action against the City for economic losses sustained as a result of the denial of the retail alcoholic beverage permit to MAW. Additionally, because the lease agreement is not tied to sales of alcohol and Couvillon did not apply for the permit itself, the City argued that Couvillon lacks a right of action against the City for the alleged wrongful denial of the permit. After a hearing, the district court denied both exceptions, and the case immediately proceeded to trial on the merits. Upon the close of evidence, the district court took the matter under advisement and allowed the parties to submit post-trial memoranda.

In written reasons, the district court concluded that the City's denial of a retail alcoholic beverage permit to MAW was unjustified. More particularly, the district court found that the City had relied on a municipal ordinance to deny the permit that was more restrictive than state law and, thus, without effect. Additionally, the court found that the reason advanced at trial for the denial of the permit was arbitrary and capricious.[2] The court determined that although MAW was subsequently granted a retail alcoholic beverage permit, the business never recovered and MAW ultimately abandoned its lease with Couvillon. The court found that, as a result of the City's conduct, Couvillon sustained damages in the form of lost rentals which amounted to $72,000, less a $15,000 credit for rents paid by MAW after it obtained the permit.

---

[2] Parenthetically, we note this finding was based on hearsay evidence solicited by questions posed by the district court albeit without objection.

At Couvillon's request, the court awarded attorney's fees in the amount of $7,500. A judgment consistent with the district court's written reasons was signed on August 21, 2012. Following the denial of a motion for new trial, the City appealed the adverse judgment.

On appeal, a divided panel of the appellate court affirmed the district court judgment. **MAW Enterprises, L.L.C. v. City of Marksville**, 13-456 (La.App. 3 Cir. 11/13/13), 128 So.3d 575. The majority found that, in denying MAW the requested permit, the City relied on a municipal ordinance which makes it "unlawful for any person to sell any alcoholic beverage within a distance of 300 feet of a parish or municipal playground or of a building used exclusively as a regular church or synagogue, public library or school," and which exempts from its prohibition only "those *person*s licensed by the Town of Marksville to deal in beverages of low alcoholic content continuously and without interruption from August, 1978 or before, ... and only for the particular premises which those persons have so licensed." Code 1972, § 11-19.1 (emphasis added). Finding the ordinance conflicts with and is preempted by state law, which authorizes municipalities to enact ordinances limiting the location of businesses which deal in alcoholic beverages but which exempts from the location limitation "*any premises* which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the [municipal or parish] ordinance," [La. R.S. 26:81(E) (emphasis added)], the majority held that the City's denial of the requested permit on basis of the preempted ordinance was wrongful. **MAW Enterprises**, 13-456 at 5, 128 So.3d at 579. In reaching this conclusion, the majority rejected the City's argument that Couvillon does not have a cause of action for economic loss sustained as the result of the City's denial of the retail alcoholic beverage permit to its lessee, MAW, reasoning that as the owner of

4

premises entitled to issuance of a permit under state law, La. R.S. 26:81(E), Couvillon stands in the same position as the property owners in **Louisiana Crawfish Producers Ass'n-West v. Amerada Hess Corp.**, 05-1156 (La.App. 3 Cir. 7/12/06), 935 So.2d 380, <u>writ denied</u>, 06-2301 (La. 12/8/06), 943 So.2d 1094; **PPG Industries, Inc. v. Bean Dredging**, 447 So.2d 1058 (La. 1984); and **Robins Dry Dock & Repair Co. v. Flint**, 275 U.S. 303 (1927). The majority found that the district court properly overruled the City's exception of no cause of action and affirmed the decision below. **MAW Enterprises**, 13-456 at 5, 128 So.3d at 579.

Judge Peters dissented, disagreeing with the majority's conclusion that La. R.S. 26:81 affords Couvillon a cause of action against the City for damages sustained when MAW was unable to meet its rent obligations after being denied a retail alcoholic beverage permit for the convenience store. **MAW Enterprises**, 13-456 at 1, 128 So.3d at 580 (Peters, J., dissents). Judge Peters noted that the majority's narrow focus on the reference to "premises" in La. R.S. 26:81, "without taking into consideration the other provisions" of the Louisiana Alcohol Beverage Control Law, La. R.S. 26:1, *et seq.*, is erroneous. *Id.* Because a reading of the law in its entirety clearly evidences that a retail alcoholic beverage permit is issued to persons, and not premises, Judge Peters reasoned that Couvillon, as owner of the premises, has no cause of action against the City for economic damages sustained when a third party (its lessee, MAW) was denied a retail alcoholic beverage permit. *Id.*, 13-456 at 3, 128 So.3d at 581.

Following the denial of its application for rehearing, the City applied for review in this court. We granted certiorari to review the judgments of the lower courts and, in particular, to examine the correctness of the lower courts'

5

determinations that Couvillon's petition states a cause of action. **MAW Enterprises, L.L.C. v. City of Marksville**, 14-0090 (La. 3/21/14), 135 So.3d 625.

## LAW AND ANALYSIS

Because we find it dispositive, we address, at the outset, the City's claim that Couvillon's petition failed to state a cause of action and that the lower courts erred in overruling the City's peremptory exception.

As we have explained, as used in the context of the peremptory exception, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert an action against the defendant. **Scheffler v. Adams and Reese, LLP**, 06-1774, p. 4 (La. 2/22/07), 950 So.2d 641, 646, *citing* **Ramey v. DeCaire**, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 118; **Everything on Wheels Subaru, Inc. v. Subaru South, Inc.**, 616 So.2d 1234, 1238 (La. 1993). The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition. *Id.* The exception is triable on the face of the pleadings and, for purposes of resolving the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true. See *Id.*, 06-1774 at 5, 950 So.2d at 646, *citing* **Fink v. Bryant**, 01-0987, p. 4 (La. 11/28/01), 801 So.2d 346, 349; **City of New Orleans v. Board of Commissioners of Orleans Levee District**, 93-0690, p. 28 (La. 7/5/94), 640 So.2d 237, 253.

The burden of demonstrating that a petition fails to state a cause of action is on the mover. **Scheffler**, 06-1774 at 5, 950 So.2d at 647. Because the exception of no cause of action raises a question of law and the lower court's decision is generally based only on the sufficiency of the petition, review of the lower court's ruling on an exception of no cause of action is *de novo*. *Id.* The pertinent inquiry is whether, viewed in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief. *Id.*

7

Generally, under La. C.C.P. art. 931, no evidence may be introduced to support or controvert the exception of no cause of action. However, an exception to this rule has been recognized by the jurisprudence, and a court may consider evidence admitted without objection to enlarge the pleadings. **City of New Orleans v. Board of Directors of Louisiana State Museum**, 98-1170, p. 10 (La. 3/2/99), 739 So.2d 748, 756. Thus, where, as here, the exception has been re-urged after trial on the merits, a determination by this court of whether the plaintiff may maintain a cause of action against the defendant may be made by a review of all the facts supported by the record. See *Id.*[3] A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the facts, the plaintiff has not stated a claim for which he or she can receive legal remedy under the applicable substantive law. *Id.*

Applying the legal precepts set forth above, we find, contrary to the conclusions of the district and appellate courts, that Couvillon cannot maintain a valid cause of action against the City under the facts of this case. A review of the petition, and of the evidence adduced without objection, reveals that the operative fact which gives rise to this litigation is the City's denial of a retail alcoholic beverage permit to MAW. Essentially, Couvillon alleges that the City had a duty to issue a retail alcoholic beverage permit to its lessee, MAW, and that its failure to issue the liquor permit caused gasoline sales at the convenience store to plummet, which in turn caused MAW to default on its rent obligations and, ultimately, to cancel the lease. Couvillon's claim against the City, therefore, is premised on allegedly tortious

---

[3] The appropriateness of *de novo* review is underscored by a review of the record in this case, which reveals there was no dispute as to the operative facts. The only factual dispute centered on the extent of damages and the manner of calculating damages.

conduct by the City in denying a permit to Couvillon's lessee, MAW, resulting in indirect economic loss to Couvillon.

Claims, such as Couvillon's, for indirect economic loss caused by negligent injury to property that interferes with contractual relations were addressed by this court in **PPG**, 447 So.2d 1058. In **PPG**, the defendant's dredging operations caused damage to a natural gas pipeline owned by Texaco. *Id.* at 1060. As a result, Texaco was unable to fulfill its contract to supply natural gas to the plaintiff, which was forced to obtain gas from another source at an increased cost. Plaintiff filed suit to recover the increased cost of obtaining the natural gas. The defendant responded by filing an exception of no cause of action, arguing that Louisiana has never recognized a right to recover for negligent interference with contractual relations. *Id.*

On review, this court characterized the **PPG** case as bringing "into focus the broad question of recovery of an indirect economic loss incurred by a party who had a contractual relationship with the owner of property negligently damaged by a tortfeasor." **PPG**, 447 So.2d at 1059. The court explained that in previous cases confronting this issue, Louisiana courts had generally denied recovery without analyzing the problem, adopting a prohibitory rule based on **Robins**, 275 U.S. 303,[4] and **Forcum-James Co. v. Duke Transportation Co.**, 231 La. 953, 93 So.2d 228 (1957).[5] **PPG**, 447 So.2d at 1060. Rather than continue to follow this mechanical

---

[4] In **Robins**, the charterer of a vessel sought recovery of damages for its loss of use while the vessel was out of service after the dry dock operator negligently damaged the vessel's propeller. **Robins**, 275 U.S. at 307. The Supreme Court denied recovery on the theory that "as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread its protection so far." *Id.*, 275 U.S. at 309 (citations omitted).

[5] In **Forcum-James**, the plaintiff was a contractor who was required by a contract with the Department of Highways to repair a bridge that was owned by the state but that had been damaged by the defendant. **Forcum-James**, 93 So.2d at 229. The plaintiff filed suit to recover the cost of the repairs. *Id.* As to plaintiff's claim that it sustained injury as a consequence of defendant's fault for which it was entitled to reimbursement under the comprehensive provisions of La. C.C. art. 2315,

approach, the **PPG** court abandoned the per se rule excluding recovery in favor of a case-by-case application of the duty-risk analysis.  See **PPG**, 447 So.2d at 1061.

In embarking upon that duty-risk analysis in the case before it, the court in **PPG** noted that the possibility of multiple actions and the potential for an unforeseeable extension of liability may have influenced prior courts in categorically denying recovery for negligent interference claims as a matter of public policy.  **PPG**, 447 So.2d at 1061.  Recognizing that imposing liability upon a tortfeasor for damages sustained by a third party who has contracted with the owner of negligently injured property could create liability "in an indeterminate amount for an indeterminate time to an indeterminate class," the court pointed out that the rule of law that prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property be held legally responsible to *all* persons for *all* damage flowing in a "but for" sequence from the negligent conduct.  *Id.*, 447 So.2d at 1061, *quoting* **Ultramares Corp. v. Touche**, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931).  Rather, "[p]olicy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss to be recovered."  *Id.*  In applying those policy considerations to the facts of the case before it, the court in **PPG** concluded that, although the case fell within the expansive terms of La. C.C. art. 2315, plaintiff could not recover because the duty allegedly violated did not encompass the particular risk of injury sustained by the plaintiff.  As the court found: "It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure

---

the court held: "It is a basic principle of the law that a tort-feasor is responsible only for the direct and proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation." *Id.*, 93 So.2d at 230.

property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss." ***Id.***

In the instant case, while the City argued that Couvillon's claim is one for "indirect economic loss incurred by a party who had a contractual relationship with the owner of property negligently damaged" requiring, under this court's holding in **PPG**,[6] analysis of scope of liability principles encompassed by the duty-risk analysis, the court of appeal majority rejected this argument out of hand, finding that "Couvillon stands in the position of the property owners in **Louisiana Crawfish**, 5 So.2d 380, **PPG Industries**, 7 So.2d 1058, and **Robins**, 5 U.S. 303, 48 S.Ct. 134, not the parties to whom recovery was denied." **MAW Enterprises**, 13-456 at 5, 128 So.3d at 579. In other words, the majority reasoned that as the owner of premises exempted from local geographic limitations regarding the location of businesses holding retail alcoholic beverage permits under La. R.S. 26:81(E), Couvillon is "the owner of property negligently damaged" by the City's action,[7] not a third party whose injury derives solely from a contractual relationship with the owner.

The flaw in this reasoning is exposed by the dissent. In his dissent, Judge Peters noted that the court of appeal majority erroneously focuses on the word "premises" in La. R.S. 26:81 to find the City owed a duty to issue a permit to the premises owned by Couvillon, without taking into consideration the other provisions of law governing the issuance of a retail alcoholic beverage permit which clearly evidence that a permit is issued to *persons* and not *premises* and that, as a result, "the *person* wishing to sell alcoholic beverages on a particular premises is the party at interest in the granting or denying of a permit." **MAW Enterprises**, 13-456 at 1,128

---

[6] See **PPG**, 447 So.2d at 1059.

[7] See **PPG**, 447 So.2d at 1059.

So.3d at 580 (Peters, J., dissents) (emphasis added). For the reasons that follow, we agree with Judge Peters' assessment that the court of appeal majority erred.

Under the traditional duty-risk analysis, whether a duty is owed is a question of law. **Hardy v. Bowie**, 98-2821, p. 12 (La. 9/8/99), 744 So.2d 606, 614. "The inquiry is whether the plaintiff has any law – statutory, jurisprudential, or arising from general principles of fault – to support his claim." *Id.* In the instant case, the lower courts, and Couvillon, relied on La. R.S. 26:81(E) as establishing a duty on the part of the City to issue a retail alcoholic beverage permit to the premises "grandfathered" by its provisions.

In pertinent part, La. R.S. 26:81, entitled "Location of business limited," provides:

> A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
>
> . . . .
>
> C. (1) When prohibited by municipal or parish ordinance, no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or synagogue, public library, school, full-time day care center as defined in R.S. 17:405(A)(4), or a correctional facility housing inmates, including but not limited to a halfway house....
>
> . . . .
>
> E. The prohibitions in this Section do not apply ... to any premises which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.

Reduced to its essentials, the statute provides that while a parish or municipality may by ordinance restrict the issuance of retail alcoholic beverage permits based on the proximity of "premises" to certain enumerated facilities, a permit cannot be refused on the basis of the existence of such a local ordinance if the

"premises ... have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance."

At issue in this case is whether the reference to "premises" in La. R.S. 26:81(E) confers a duty on the part of the permitting authority in favor of the owner of premises "grandfathered" under its provisions. The issue, in part, involves statutory construction, which is resolved by resort to well-settled rules. Those rules instruct that the meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. **Allen v. Allen**, 13-2778 (La. 5/7/14), ___ So.3d ___, *citing* **In re Succession of Boyter**, 99-0761, p. 9 (La. 1/7/00), 756 So.2d 1122, 1129; **Stogner v. Stogner**, 98-3044, p. 5 (La. 7/7/99), 739 So.2d 762, 766. A statute must be applied and interpreted in a manner that is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. *Id.* In construing legislation, it is presumed that the intention of the legislative branch is to achieve a consistent body of law. *Id.*

Found in the chapter of the La. Revised Statutes entitled "The Alcoholic Beverage Control Law," La. R.S. 26:81(E) is one provision in a comprehensive scheme regulating the sale of alcoholic beverages in Louisiana. See La. R.S. 26:1, *et seq.* A review of the provisions of the Alcoholic Beverage Control Law in their entirety reveals that the law has as its objective the regulation of *persons* engaged in the sale of alcohol and that, as a result, it is the *person* applying for a permit to sell alcoholic beverages at a particular location, or "premises," who is the party at interest in the granting or denying of a permit. In short, under the relevant law, permits are issued to *persons* and not *premises* and, thus, any duty that may potentially be owed

13

by a permitting authority would be owed to the *person* applying for the permit and not the owner of the premises where the business is sought to be located.[8] When La. R.S. 26:81 is viewed in its entirety, along with all other laws on the same subject matter and with the obvious intent of the legislature in enacting these provisions, it is evident that the statute merely speaks to where a business engaged in the sale of alcohol can be located. It does not confer an independent right to a permit on the premises where the business is to be located. This becomes abundantly clear when the law addressing permits is examined.

Louisiana R.S. 26:71, entitled "Permit required; fees; exceptions," provides that "before engaging in the business of manufacturing, supplying, or dealing in alcoholic beverages, *all persons* shall obtain from the commissioner ... a permit to conduct each separate business ...." La. R.S. 26:71(A) (emphasis added). Louisiana R.S. 26:74, which addresses "Local license and permit fees," continues the connection between permits and *persons*, by providing that, "[p]arishes and municipalities may require annual permits and fees from *dealers* holding state permits under this Chapter." La. R.S. 26:74(A) (emphasis added). A "dealer" is defined as "any *person* who, as a business ... sells [or] offers for sale ... any alcoholic beverage in the state or engages herein in any business transaction relating to any such beverage." La. R.S. 26:2(5) (emphasis added). Maintaining the link between permits and personality, La. R.S. 26:75(A) provides, in pertinent part: "No *person* shall do any act for which a permit is required by this Chapter or by local authorities acting hereunder unless he holds the proper state and local permit." La. R.S. 26:75(A) (emphasis added).

---

[8] MAW dismissed its damages claim upon receipt of the retail alcoholic beverage permit, and any potential liability of the City to MAW was not briefed or argued and is not before this court.

Of particular relevance is La. R.S. 26:76, which clearly sets forth the personal nature of a permit. It declares that "[t]he permit is not assignable or heritable" and that it must be "returned to the office of alcohol and tobacco control or surrendered to an agent of the commissioner ... if the ownership of the business is transferred or the business is terminated." La. R.S. 26:76(A)(2).

Ensuing provisions also demonstrate that permits are directed to *persons*. Louisiana R.S. 26:77, for example, requires an applicant for a permit to publish a signed notice in the appropriate newspaper indicating "I am applying for a permit to sell alcoholic beverages at retail at the following address: ___." Louisiana R.S. 26:78 outlines the content of the application for a permit and requires such personal information as "the full name of the applicant, his social security number, his federal employer identification number, his Louisiana Department of Revenue business account number, ... his correct home address ... and the correct street address of the premises wherein the business ... is to be conducted." Finally, La. R.S. 26:80 lists the qualifications of applicants for permits. In pertinent part, it provides, *inter alia,* that the applicant "[b]e a *person* of good character and reputation and over eighteen years of age," "[b]e a *citizen* of the United States and the state of Louisiana," "[b]e the owner of the premises [or] have a bona-fide written lease therefor," and "[h]ave not been convicted of a felony under the laws of the United States, the state of Louisiana, or any other state or country." La. R.S. 26:80(A)(1), (2), (3), and (5) (emphasis added).

The foregoing provisions thus make it clear that the permits required under the Alcoholic Beverage Control Law are directed to *persons* engaged in the business of manufacturing, supplying, or dealing in alcoholic beverages. It is against this legislative backdrop and in conjunction with these provisions of law that the

reference to "premises" in La. R.S. 26:81(E) must be construed. As illustrated, La. R.S. 26:71 through 26:80 clearly and consistently demonstrate that the permit required under the Alcoholic Beverage Control Law is issued to *persons*. Considering, as we must, the law in its entirety and all other laws on the same subject matter, we conclude that the reference to "premises" in La. R.S. 26:81(E) was not intended to alter the strictly personal nature of the retail alcoholic beverage permit. Rather, as Judge Peters states in his dissent, "the change in nomenclature," from "persons" to "premises," that appears in La. R.S. 26:81 is best explained by resort to the title of the statute. See **MAW Enterprises**, 13-456 at 3, 128 So.3d at 581 (Peters, J., dissents); see also **State v. Madere**, 352 So.2d 666, 668 (La. 1977) (noting that the title of an act, while not part of the statute, may be used to determine legislative intent). That title, "Location of business limited," reveals that the statute is not directed to the permit process; rather, it addresses the location of the business, placing limitations on the locations from which a permit holder may operate a business. See **MAW Enterprises**, 13-456 at 3, 128 So.3d at 581 (Peters, J., dissents). Clearly, then, the grandfather clause in La. R.S. 26:81(E) does not alter the personal nature of a permit or extend an interest in the permit to the owner of property. It simply permits retail alcohol sales at certain locations by an otherwise qualified *person* holding a permit despite a local geographic limitation. Because Couvillon is the owner/lessor of the premises rather than the *person* denied a permit to sell alcohol at those premises, the City owed no duty to Couvillon under La. R.S. 26:81(E); rather the City's duty, if any, in this case was owed to MAW, the otherwise qualified *person* or entity applying for a permit.

Once we find the City did not, by virtue of La. R.S. 26:81(E), owe a duty to Couvillon to issue the permit, and that the court of appeal erred in sustaining a cause

of action in favor of Couvillon on that basis, it becomes apparent that Couvillon's complaint hinges solely on its contention that the City's fault in denying a retail alcoholic beverage permit to its lessee, MAW, caused gasoline sales at the convenience store to plummet, which in turn caused MAW to default on its rent obligations and ultimately to cancel the lease, resulting in injury to Couvillon for which it is entitled to reimbursement under the broad provisions of La. C.C. art. 2315. In other words, Couvillon's cause of action is based on a claim that it sustained economic loss as a result of negligent injury to property that interfered with its contractual relationship with its lessee. Couvillon's status as a third party in this equation brings it squarely within the negligent interference with contractual relations claims addressed by this court in **PPG**.

As previously discussed, since **PPG**, claims such as Couvillon's require a careful case-by-case application of the scope of liability principles encompassed by the duty-risk analysis.[9] We begin that required analysis by noting, as the court of appeal points out, and as our review of the record confirms, that the City does not seriously dispute it had a duty to issue a retail alcoholic beverage permit to MAW and that it denied the permit on the basis of its preempted ordinance.[10] See **MAW Enterprises**, 13-456 at 5, 128 So.3d at 579. **PPG** directs the pertinent inquiry for

---

[9] The standard negligence analysis employed by courts in determining whether to impose liability under La. C.C. art. 2315 is the duty-risk analysis, which consists of a four prong inquiry composed of the following questions: (1) was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which occurred; (2) did the defendant owe a duty to the plaintiff; (3) was the duty breached; and (4) was the risk, and harm caused, within the scope of protection afforded by the duty breached? **Mathieu v. Imperial Toy Corp.**, 94-0952, p. 4 (La. 11/30/94), 646 So.2d 318, 321-22. All four inquiries must be affirmatively answered for a plaintiff to recover. **Id**., 94-0952 at 4, 646 So.2d at 322. When analyzing claims of negligent interference with contractual relations, under **PPG**, attention focuses on the fourth prong of the inquiry.

[10] Because we consider the issue in the context of an exception of no cause of action, we acknowledge, but do not necessarily endorse, the City's concession of liability to the applicant, MAW, which was not raised as an issue before this court.

17

resolving whether Couvillon has a cause of action under these facts. Under **PPG**, the question presented is properly framed as follows: whether the economic damages sustained by Couvillon, caused by the City's denial of the permit to MAW, which prevented MAW from meeting its contractual obligation to pay rent, fall within the scope of the protection intended by the law's imposition of a duty on the City not to refuse a permit to an otherwise qualified applicant. In answering this inquiry, we are guided by the following principles explained by the court in **PPG**:

> Rules of conduct are designed to protect *some* persons under *some* circumstances against *some* risks. Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in terms of the moral social and economic values involved, as well as with a view toward the ideal of justice.

**PPG**, 447 So.2d at 1061 (citations omitted; emphasis in original).

In **PPG**, the court applied the foregoing principles to find that the duty violated did not encompass the particular risk of injury sustained by the plaintiff. The court reasoned:

> There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by Texaco because of the damage to its property. As noted, however, a rule of law is seldom intended to protect *every* person against *every* risk. It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner. It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured party will thereby suffer an economic loss.

**PPG**, 447 So.2d at 1061 (emphasis in original).

We find the reasoning of the court in **PPG** persuasive in this case. It is difficult to associate the moral, social, and economic values involved with the duty to issue a retail alcoholic beverage permit to a qualified entity with the risk of injury and the economic loss sustained by an entity whose only interest in the permit arose from a lease with the applicant for the permit. This is particularly true given that Couvillon's alleged loss in this case – the loss of rental income – was not at all tied to the alcohol sales that the denial of the permit allegedly impacted. In fact, the lease agreement in this case allowed MAW, at Couvillon's discretion, to delay paying rent until a retail alcoholic beverage permit was secured, though the lease did provide for a possible rental based on the sales of gasoline.[11] Once the permit was issued to MAW, the lease transferred to a new lease with a monthly rental of $4,000. We find it highly unlikely that the moral, social, and economic considerations underlying the imposition of a duty to issue a retail alcoholic beverage permit to a qualified applicant encompass the risk that a third party who has contracted with the applicant will thereby suffer an economic loss, especially when that loss is not even directly tied to the sales of alcohol the timely issuance of a permit would have allowed.

There is another important policy consideration advanced by the court in **PPG** that guides our analysis here – the recognition that imposition of responsibility on the City for Couvillon's damages could create liability "in an indeterminate amount for an indeterminate time to an indeterminate class." **PPG**, 447 So.2d at 1061, *quoting* **Ultramares**, 255 N.Y. at 179, 174 N.E. at 444. For example, if any of MAW's employees were laid off or experienced decreased hours while MAW was unable to

---

[11] Although the lease provided that the first ninety days would be rent free, with a possible increase thereafter not to exceed $.05 per gallon of gasoline sold, testimony at trial established that Couvillon and MAW orally agreed to modify the lease to make it rent free for the first six months.

Significantly, MAW did not even submit the application for the liquor license until three months after the occupational license was granted.

sell alcohol, they arguably sustained damages which in all likelihood would not have occurred *but for* the City's conduct. Likewise, if any of MAW's alcoholic beverage suppliers were unable to sell alcohol to MAW, they arguably sustained damages which in all likelihood would not have occurred *but for* the City's conduct. The same holds true for suppliers of other products who might have experienced a decrease in sales due to decreased foot traffic which in all likelihood would not have occurred *but for* the City's conduct. "Because the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation or recovery of damages." **PPG**, 447 So.2d at 1061-62.

The relevant policy considerations outlined by the court in **PPG**, as applied to the unique facts of this case, lead us to conclude that the duty violated in the present case simply did not encompass the particular risk of injury sustained by Couvillon and did not intend protection from the particular loss for which recovery is sought by Couvillon. As a result, Couvillon has failed to state a cause of action in negligence.

## CONCLUSION

For the reasons assigned, we find that Couvillon has not stated a claim for which it can receive legal remedy under the applicable substantive law and that, as a result, the lower courts erred in overruling the City's peremptory exception of no cause of action. The decisions of the court of appeal and the district court are hereby reversed, and judgment is rendered sustaining the City's exception of no cause of action and dismissing Couvillon's claims at its costs.

**REVERSED AND RENDERED.**

09/03/14

SUPREME COURT OF LOUISIANA

No. 2014-C-0090

MAW ENTERPRISES, L.L.C., ET AL.
VERSUS
CITY OF MARKSVILLE, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF AVOYELLES

Clark, Justice, dissenting.

In determining whether the plaintiff's petition stated a cause of action, the primary concerns are whether the City owed a duty to the plaintiff, and whether the risk and resulting harm were within the scope of protection afforded by the duty breached.

"Whether a duty is owed is a question of law. The inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim." *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So. 2d 606, 614. R.S. 26:86 states that "[t]he commissioner with respect to state permits and municipal authorities and parish governing authorities with respect to local permits may withhold the issuance of permits in the manner and under the terms and conditions specified in this Chapter . . ." According to statutory law, then, the City could deny the license only for reasons contained in Title 26, Chapter 1. The plaintiff alleged that the City had denied the application based on a local ordinance which was invalid, and not, therefore, a reason contained within Title 26, Chapter 1. Based on the allegations in the petition, then, it is clear that the City had a duty to MAW, at least, to timely issue the license.

Plaintiff also alleged, however, that the City should have issued the license

1

based upon the grandfather clause contained in R.S. 26:81. The statute reads in pertinent part:

> C. (1) <u>When prohibited by municipal or parish ordinance, no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or . . . school . . .</u>
>
> * * *
>
> E. <u>The prohibitions in this Section do not apply to any premises . . . which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.</u>

This statute speaks to the right of the premises owner to either maintain an existing liquor license on his property or to market his property to others as being eligible for locating a business requiring a liquor license, even after a local ordinance is passed which bars issuance of a liquor license to his property due to its proximity to a church or school. The undoubted purpose of the statute is to protect property owners from economic damages resulting from a local government re-zoning or passing an ordinance barring a liquor license at a location where one had previously been issued, and then refusing to issue a license based upon the ordinance or new zoning. Based upon this grandfather clause, the City had a duty to issue a liquor license to a qualified person or entity for conducting business on plaintiff's property. The City argues, and the majority evidently finds, that such a ruling would mean that the permit belonged solely to the premises, contrary to the "language and spirit" of Title 26. Nothing could be further from the truth. No one espouses such a result, not the plaintiff, not the lower courts, and certainly not the dissenters.

Title 26 is a multifaceted scheme developed by the legislature to control the sale of alcoholic beverages. It regulates who may be licensed, where a licensee may operate his business, and, to some extent, what type of business may sell

2

alcohol. The Title makes it clear that there are two aspects to liquor licensing: personal eligibility and premises eligibility. The qualifications for applicants are contained in R.S. 26:80. The limitations on the locations allowed liquor licenses are contained in R.S. 26:81.

According to the Title, then, an otherwise qualified individual may only be issued a liquor license if the premises is also eligible for a license. For instance, a qualified individual cannot obtain a new, non-grandfathered liquor license for a location next to a school, if there is a local ordinance restricting such licensing. Likewise, an unqualified individual cannot obtain a liquor license at any location, even one at which licensing is presently allowed.

As stated above, the limits on <u>where</u> a license may be granted are contained in R.S. 26:81, entitled "Location of business limited." The statute reads in pertinent part:

> A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
>
> B. (1) No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote.
>
> * * *
>
> (3) Any premises licensed to deal in alcoholic beverages, upon proper application, shall be issued a permit . . . The new permit shall be of the same class as the one for which the premises has a license.
>
> C. (1) When prohibited by municipal or parish ordinance, no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church . . .
>
> * * *
>
> E. The prohibitions in this Section do not apply to any premises . . . which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.

The Louisiana Civil Code mandates that when a law is clear and

3

unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without any further interpretation of the intent of the legislature. La.Civ.Code art. 9. This law is clear and unambiguous, and it does not conflict with, but merely complements, all other statutes contained in Title 26. The "grandfather clause" simply exempts locations such as the location of the premises at issue, from the prohibitions contained in the statute, when liquor has been licensed on the premises for a period of one year or longer prior to the adoption of a local ordinance which would have barred the issuance of such a license.

Further evidence of the legislature's scheme in licensing premises is contained in other statutes in Chapter 1. For instance, R.S. 26:76, which the majority states "clearly sets forth the personal nature of a permit," as if the plaintiff and the lower courts did not agree, also refers to "the licensed premises." The statute reads in pertinent part:

A. The following shall apply to permits issued under this Chapter:

\* \* \*

(4) When the location of a place of business is proposed to be changed, the proposal shall be received and must be approved by the issuing authority before such action is taken. The change of location shall be noted on the permit by the issuing authority and the permit shall be invalid unless the notation is made.

(5) The permit, in addition to any other permit required to be displayed, shall be posted in a conspicuous place **on the licensed premises**, so as to be easily seen and read by the public. No other signs or notices, except those required by state or federal law, shall be required to be displayed by the retail dealer.

\* \* \*

R.S. 26:76 (emphasis added).

Likewise, the majority even recognizes that R.S. 26:77 requires an applicant "to publish a notice in the appropriate newspaper indicating 'I am applying for a

permit to sell alcoholic beverages at retail at the following address: ___.'" The majority fails to mention that R.S. 26.77 also refers to the "premises for which application is to be made," and "the premises for which a permit was in effect." The statute states in pertinent part:

\* \* \*

E. **Each notice of intent poster shall be posted conspicuously outside the premises for which application is to be made** for no less than fifteen consecutive days prior to the filing of an application for a retailer's permit for the premises. Such display of a notice of intent poster furnished by the office of alcohol and tobacco control shall serve as the only state official public notice required. **However, if the application is for premises for which a permit was in effect within the previous six months, the notice of intent poster shall be posted upon the filing of the application and remain posted for at least fifteen days thereafter.**

R.S. 26:77 (emphasis added).

Finally, of course, the grandfather clause, itself, speaks of "**premises . . . which have been licensed** to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance." R.S. 26:81. Clearly, the legislature intended that liquor licenses be issued to **persons** or entities for doing business **at a particular location**, and the owners of locations which are grandfathered by the terms of R.S. 26:81 are entitled to have liquor licenses issued to qualified permitees for doing business at those locations.

The majority quotes with approval Judge Peters' statement in dissent, "the change in nomenclature" from "persons" to "premises" is best explained by resort to the title of the statute. The majority ignores the fact that the change in nomenclature completely changes the meaning of the statute, and for no reason, as the statute is unambiguous as written. The majority errs in its belief that the words "persons" and "premises" are interchangeable, or that the legislature mistakenly applied the grandfather clause to "premises" rather than "persons."

5

Once the City's duty to plaintiff under Title 26 to issue a liquor permit to plaintiff's lessee is established, the next step is to determine whether the harm alleged (and for the purposes of an exception of no cause of action, assumed to be true) falls within the scope of protection afforded by the duty breached.

In examining the scope of duty in this case, this Court's analysis in the *PPG Industries* case is instructive. In denying PPG's claim, this Court looked to policy reasons, stating that "the rule of law which prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property must be held legally responsible to all persons for all damages flowing in a 'but for' sequence from the negligent conduct." *PPG*, 447 So. 2d at 1061. This Court further explained:

> Rules of conduct are designed to protect some persons under some circumstances against some risks. Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in the terms of the moral, social and economic values involved, as well as with a view toward the ideal of justice.

*PPG*, 447 So. 2d at 1061. In finding that the duty violated did not encompass the particular risk of injury sustained by PPG, this Court reasoned:

> There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by [the gas company] because of the damage to its property. As noted, however, a rule of law is seldom intended to protect every person against every risk. It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner. It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer an economic loss.

6

*PPG*, 447 So. 2d at 1061.

As in *PPG*, there is a clear ease of association between the law which required a permitting authority to issue a license to a qualified entity such as MAW Enterprises and the risk of injury sustained by MAW. The critical difference here, which the majority fails to recognize, is that the assessment should be of the ease of association between the law which requires the City to issue a license to a qualified applicant at plaintiff's premises, which is grandfathered under state law, and the risk of injury sustained by plaintiff as a result of the City's failure to follow that law. What is present here, but not in *PPG*, is the existence of a statute, passed by the legislature as part of the regulatory scheme contained in Title 26, which protects the economic interests of property owners such as plaintiff from the actions of local government **under the exact fact situation we have here**, *i.e.*, the local government passes an ordinance which purports to restrict the issuance of a liquor license to a premises at which liquor licenses had been issued for over a year. This statute containing the grandfather clause clearly has an ease of association with plaintiff, and, likewise, its moral, social and economic considerations clearly encompass the imposition of the risk to plaintiff under these circumstances.

Because plaintiff alleged a valid cause of action, the trial court did not err in denying the City's exception of no cause of action, and the majority is wrong to decide otherwise.

I respectfully dissent.

7

SUPREME COURT OF LOUISIANA

NO. 2014-C-0090

MAW ENTERPRISES, L.L.C., ET AL.

VERSUS

CITY OF MARKSVILLE, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD
CIRCUIT, PARISH OF AVOYELLES

**HUGHES, J.,** dissenting.

I respectfully dissent.

Couvillon is the property owner. Couvillon leased the property to MAW. The terms of the lease specifically tied the rental to the issuance of a permit to sell alcohol. The City admittedly wrongfully delayed the issuance of the permit, which resulted in economic loss to MAW and Couvillon.

There was no "negligent injury to property" resulting in physical damage as occurred in the cases cited by the majority. A City vehicle did not crash into the store and thus interrupt the sale of alcohol. Rather, the City wrongfully delayed issuing a permit to the lessee which, it is easy to see, damaged the lessor as well.