GUIDRY, J.
|aA cousin of the decedent in this succession proceeding appeals a judgment sustaining a peremptory exception raising the objection of no cause of action whereby his petition to set aside or modify a judgment of partial possession that failed to recognize him as an heir was dismissed with prejudice. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
According to the Petition to Appoint Ad-, ministratrix, Mary Ann Aranyosi died intestate in Tangipahoa Parish on January 5, 2005. Her cousin,[1] Katherine Kreko, was appointed administratrix of her succession by an' order signed February 7, 2005. Thereafter, in the course of administering her cousin’s succession, Mrs. Kre-ko filed an application to sell, at private sale, certain immovable property located in Livingston Parish that belonged to the succession. Mrs. Kreko’s brother, Peter Joseph Aranyosi (“Mr. Aranyosi”), opposed the application and the matter was set for a hearing. Following the hearing, the district court found in favor of Mrs. Kreko and granted her authority to sell the succession’s interest in the immovable property located in Livingston Parish.
On January 12, 2006, Mrs. Kreko filed a petition for possession and for waiver of final accounting, wherein she sought to have John Aranyosi, Margaret Aranyosi Good, and Helen Barnum, the decedent’s uncle and aunts, recognized as the decedent’s sole heirs and to send them into possession of all property belonging to the succession. Mrs. Kreko also requested that she be discharged as administratix of the succession. On that same date, the district court signed a Judgment of Partial Possession and Waiver of Final Accounting, wherein John Aranyosi, Margaret Ar-anyosi Good, and Helen Barnum were recognized as the sole heirs of the decedent and sent into possession of a one-third *106 interest each inlsthe property belonging to the- decedent’s succession. Mrs, Kreko was also discharged as administratrix in that judgment.
On January 4, 2010, Mr. Aranyosi filed a rule to have the judgment of partial possession set aside and to have a new judgment issued recognizing him as an heir and placing him in possession of a share of the decedent’s estate. He also requested that the rule be served on. Mrs. Kreko, ordering her to show cause why the judgment should not be “set aside and modified to recognize” his claim as an heir in the decedent’s succession... Mrs. Kreko opposed the rule and a hearing on the matter was held on February 1, 2010, at'which time the district court took the matter under advisement. However, following the February 1, 2010 hearing, the district court, ex proprio motu, held another hearing on the matter. According to the minute entry for .that hearing, the district court rendered judgment in favor of Mrs. Kreko in open court, but the minute entry does not provide the substance of the ruling nor is a written judgment from that hearing contained in the record before us.
Four years later, on April 21, 2014, Mr. Aranyosi again sought to have the January 12, 2006 judgment of partial possession vacated and to have himself recognized as an heir of the decedent’s succession, this time by filing a petition seeking such relief. In that petition, he prayed that thé original judgment of possession be nullified and that he be granted an interest in his cousin’s succession. Mrs. Kreko answered the petition, generally denying Mr. Aranyosi’s claim to any rights in the decedent’s succession. Before the matter could be set for trial, the district court raised the objection of no cause of action on its own motion and set the matter for a hearing. Following a hearing on the exception, the district court issued a judgment, signed August 19, 2014, sustaining the peremptory exception raising the objection of no cause of action and dismissed Mr. Aranyosi’s claims. Herein, Mr. Ara-nyosi appeals the August 19, 2014 judgment.
^discussion
In this appeal, Mr. Aranyosi contends that, the district court erred in sustaining the objection of no cause of action, thereby holding that he had no authority to assert he was an heir to the decedent’s succession.[2] It is undisputed that, at the time of her death, the decedent was not married, had no children, had no siblings, and was pre-deceased by her parents. Thus, her only living relatives consisted of an uncle, two aunts, and cousins, of which Mr. Aranyosi numbered.
In such cases, La. C.C. art. 896 provides:
If the deceased leaves neither descendants, nor brothers, sisters, or descendants from them, nor parents, nor spouse not judicially separated, nor other ascendants, his other collaterals succeed to his separate property. Among the collateral relations, the nearest in degree excludes all the others. If there are several in .the same degree, they take equally and by heads. [Emphasis added.]
Further, in application of this article, the following articles must also be considered:
The propinquity of consanguinity is established by the number of generations, *107 and each generation is called a degree. La. C.C; art. 900.
The series of degrees forms the line. The direct line is the series of degrees between persons who descend one from another. The collateral line is the series of degrees between persons who do not descend one from another, but who descend from a common ancestor.
In the direct line, the number of degrees is equal to the number of generations between the heir and the deceased. In the collateral line, the number of degrees is equal to the number of generations between the heir and the common ancestor, plus the number of generations between the common ancestor and the deceased.
La. C.C. art. 901. Hence, as indicated in La. C.C. art. 901, the direct line is composed of persons who descend one from another (i.e., descendants and ascendants), while the collateral line ⅛ composed of persons who do not descend [5from each other, but who descend from a common ancestor. Kathryn Venturatos Lorio, Successions and Donations, ■ in 10 Louisiana Civil Law Treatise § 2:3 (2d ed.).
Under the foregoing definitions, Mr. Ar-anyosi, as well as the aunts and one uncle who have been recognized as the decedent’s heirs, are considered collateral heirs of the decedent, because, they are not a direct ascendant or descendant of the decedent, but rather are related to the decedent by virtue of a common ancestor, which in this case Mr. Aranyonsi concedes is the decedent’s paternal grandfather.[3] Thus, adding up the number of degrees of separation in the collateral line in accordance with La. C.C. art. 901, the total degrees of separation between the decedent and. her paternal aunts and uncle would be three degrees, whereas the degrees of separation between Mr. Aranyosi and the decedent would be- four degrees. According to La. C.C. art. 896, among collateral relations, the nearest in degree excludes all the others. Hence, as the decedent’s aunts and uncle aré nearer in degree than Mr. Aranyosi, they were properly found to inherit from the decedent to the exclusion of Mr. Aranyosi.
Nevertheless, despite this finding, Mr. Aranyosi still argues that he should not be considered as inheriting for himself, but rather, through representation, he should be considered as inheriting through his father, the decedent’s pre-deceased uncle. Representation is a fiction of the law, the effect of which is to put the representative in the place, degree, and rights of the person represented. La. C.C. art. 881. “In the collateral line, representation is permitted in favor of the children and descendants of file brothers and sisters of the deceased, whether they succeed in concurrence with their uncles and aunts, or whether, the brothers and sisters of Rthe deceased, having died, their descendants succeed in equal or unequal degrees.” La. C.C. art. 884. Thus, the law only allows for representation in the collateral line to occur in favor of the descendants of the decedent’s siblings, i.e. the decedent’s nieces and nephews, and not for any other collaterals. Lorio, Successions and Donations, in 10 Louisiana Civil Law Treatise § 2:6. As a cousin, the option of representation for the purpose of appearing in the decedent’s succession is not accorded to Mr. Aranyosi. See Succession of Jacobs, 129 La. 432, 435-36, 56 So. 358, 359 (1911) (citing Ratcliff v. Ratcliff, 7 Mart.(n.s.) 335, 336 (La.1829)). Accordingly, we find the district court properly rejected Mr. Ara-nyosi’s contentions and correctly sustained the peremptory exception raising the objection of no cause of action, which it noticed on its own motion. See La. C.C.P. art. 927(B).
*108 CONCLUSION
For the foregoing reasons, we find the district court properly raised the objection of no cause of action on its own motion and correctly dismissed Mr. Aranyosi’s claims by sustaining the peremptory exception raising the objection. In so finding, we cast all the costs of this appeal to Peter Joseph Aranyosi.
AFFIRMED.

. It is observed that although in the petition Mrs. Kreko refers to herself as the “niece” of the decedent, she later acknowledged that the decedent had no brothers or sisters.

. Because the exception of no cause of action raises a question of law and the lower court’s decision is generally based only on the sufficiency of the petition, review of the lower court’s ruling on an exception of no cause of action is de novo. Maw Enterprises, L.L.C. v. City of Marksville, 14-0090, p. 6 (La.9/3/14), 149 So.3d 210, 215.

. The only evidence regarding the decedent’s family history comes from the, pleadings, of which we observe that while Mr. Aranyosi and Mrs. Kreko specifically identified John Aranyosi and Margaret Aranyosi Good as the children of the common ancestor that has been identified, the paternal grandfather, no information is provided in the record regarding Helen Barnum’s family connection to the decedent.