Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,985-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| CASSANDRA DORSEY, INDIVIDUALLY AND OBO DECEASED MOTHER, LOUISE TAYLOR | Plaintiff-Appellant |

versus

| | |
|---|---|
| RAYVILLE NURSING AND REHABILITATION CENTER, INC. AND UNKNOWN DEFENDANTS | Defendants-Appellees |

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 48,935A

Honorable John Clay Hamilton, Judge

* * * * *

| | |
|---|---|
| S. DOUGLAS BUSARI & ASSOCIATES, LLC By: Sule Douglas Busari | Counsel for Appellant |
| THE HARVILLE LAW FIRM, LLC By: Douglas Lee Harville | |
| GOLD, WEEMS, BRUSER, SUES & RUNDELL By: Daniel T. Marler    Randall M. Seeser | Counsel for Appellee |

* * * * *

Before STONE, THOMPSON, and ELLENDER, JJ.

**STONE, J.**

This appeal arises from the Fifth Judicial District Court, the Honorable Clay Hamilton presiding. Cassandra Dorsey, the plaintiff-appellant, brought this action individually and on behalf of Louise Taylor ("Ms. Taylor"), the plaintiff's deceased mother. The defendant-appellee is Rayville Nursing and Rehabilitation Center, Inc. (the "defendant"). The defendant filed a peremptory exception of no cause of action invoking the qualified immunity of the Louisiana Health Emergency Powers Act ("LHEPA"), and a dilatory exception of vagueness. The trial court granted the defendant's exception of no cause of action and dismissed the plaintiff's case with prejudice, and pretermitted the defendant's exception of vagueness/motion to strike. The plaintiff appeals that judgment.

## ALLEGATIONS OF THE PETITION; DEFENDANT'S EXCEPTIONS, EXHIBITS

At the time of the events concerned herein, Ms. Taylor was a resident/patient of the defendant. On April 7, 2020, Elizabeth Richardson ("Richardson"), a member of defendant's nursing staff, "heard a loud popping sound" emanating from Ms. Taylor's leg. Richardson notified Amber Ward ("Ward"), another nursing staff member. Ward redirected Richardson to notify Sheryl Slaughter, Ms. Taylor's treating nurse. None of these employees notified the doctor or provided medical assistance. Ms. Taylor was not taken to the hospital emergency room until April 10, 2020 (i.e., three days later). The x-ray showed that Ms. Taylor had a fractured tibia. The doctor performed surgery and then put a cast on Ms. Taylor's leg to protect the broken tibia.

The plaintiff claims that the defendant's employees: (1) fractured Ms. Taylor's tibia; and (2) breached the standard of care in failing to provide her with proper medical care for three days after the fracture occurred. As to the first claim, plaintiff makes zero allegations regarding how defendant's staff fractured Ms. Taylor's leg or why the plaintiff believes that the defendant's staff caused the fracture. Regarding the second claim, the plaintiff elaborates that the delay of treatment extended the duration of Ms. Taylor's physical pain and suffering, and caused her mental distress.

The defense filed the exceptions along with an answer. The medical review panel opinion ("MRPO"), finding unanimously that no breach of the standard of care occurred, was attached as an exhibit. The plaintiff filed an opposition to the exceptions, but captioned it as an "objection to the peremptory exception and exhibit." Despite the promising caption, that filing in no way objected to the trial court's consideration of exhibits in ruling on the exceptions; on the contrary, the plaintiff attached two exhibits of her own to this miscaptioned opposition memorandum. At the hearing, however, no exhibits were actually introduced (or sought to be introduced) into evidence. Nonetheless, the trial court overtly weighed the unintroduced "evidence" against the allegations of the petition, and relied on facts alleged in the MRPO in making its decision, thereby casting doubt on whether the injury actually occurred on April 7, 2020 (as opposed to a day or two beforehand or afterward).

## LAW

The Louisiana Supreme Court recently reiterated the law concerning the exception of no cause of action:

> Because it presents a question of law, the sustaining of an exception of no cause of action is subject to *de novo* review. A cause of action, when examined in the context of a peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. The court reviews the petition and accepts well-pleaded allegations of fact as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. (Internal citations and quotation marks omitted).

*Watson Mem'l Spiritual Temple of Christ v. Korban*, 24-00055 (La. 6/28/24), 387 So. 3d 499, 506, *reh'g denied*, 24-00055 (La. 8/2/24), 390 So. 3d 277.

There are two exceptions to the rule that the exception must be tried on the face of the petition alone. First, attachments to the petition may be considered as a part thereof for the purpose of deciding the exception. *Rogers v. Ash Grove Cement Co.*, 34,934 (La. App. 2 Cir. 11/2/01), 799 So.2d 841, *writ denied*, 01–3187 (La. 2/8/02), 808 So.2d 351. Second, if evidence is *admitted* without objection at the hearing on the exception, the trial court sits as factfinder and its judgment is subject to manifest error review. *Coleman v. Querbes Co. No. 1*, 51,159 (La. App. 2 Cir. 2/15/17), 218 So. 3d 665, 672, *writ denied,* 17-0694 (La. 6/29/17), 222 So. 3d 31; *Maw Enters. LLC v. City of Marksville*, 14–0090 (La. 9/3/14), 149 So.3d 210. [1] However, "[e]vidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be

---

[1] If the exception is pled along with a motion for summary judgment, evidence admitted for purposes of the latter may be considered in deciding the exception, at least when the plaintiff requests in brief that the court do so. *Crosby v. Stinson*, 33,628 (La. App. 2 Cir. 8/23/00), 766 So. 2d 615, 618.

3

considered as such on appeal." *McNeill v. Lofton*, 54,066 (La. App. 2 Cir. 9/22/21), 327 So. 3d 1066, 1068. (Internal quotation marks and citations omitted).

At all times relevant to these proceedings, La. R.S. 29:771(B)(2)(c), the applicable LHEPA provision stated:

> During a state of public health emergency, any health care providers shall not be civilly liable for causing the death of, or injury to, any person…*except in the event of gross negligence or willful misconduct*. (Emphasis added).

"By its terms, this provision applies: (1) in favor of "any healthcare provider"; (2) regarding any personal injury or property damage claim; which (3) arises during a public health emergency." *Lathon v. Leslie Lakes Ret. Ctr.*, 54,479 (La. App. 2 Cir. 9/21/22), 348 So. 3d 888, 891, *writ denied,* 22-01566 (La. 12/20/22), 352 So. 3d 80. "Health care provider" includes licensed nursing home operators and their employees, as well as registered or licensed practical nurses and certified nurse assistants. La. R.S. 40:1231.1(A)(10).

Negligence is comprised of five elements:

> 1) the defendant had a duty to conform his conduct to a specific standard (the duty element); 2) the defendant's conduct failed to conform to the appropriate standard (the breach element); 3) the defendant's substandard conduct was cause-in-fact of the plaintiff's injuries (the cause-in-fact element); 4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and 5) proof of actual damages (the damages element).

*Lambert v. Zurich Am. Ins. Co.*, 55,064 (La. App. 2 Cir. 6/28/23), 366 So. 3d 1285, 1291. "Gross negligence" requires all the same elements as ordinary negligence, but additionally requires a heightened degree of fault; it has a well-defined meaning in Louisiana law:

4

> Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to exercise. Gross negligence has also been termed the entire absence of care and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from ordinary care or the want of even scant care. *There is often no clear distinction between...willful, wanton, or reckless...conduct and gross negligence, and the two have tended to merge and take on the same meaning.* Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.[2]

*Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099 (La. 7/5/94), 639 So. 2d 216. Additionally, the language emphasized in the above quote from *Ambrose* makes clear that the concept of gross negligence subsumes willful, wanton, and reckless misconduct.

### ANALYSIS

Because the exhibits were not introduced into evidence, the trial court could not consider them. *McNeill*, *supra*. That is so regardless of whether the plaintiff objected. The trial court erred in considering the MRPO in deciding whether the petition states a cause of action; likewise, the trial court erred in casting doubt on the petition's allegation that the tibia fracture occurred on April 7, 2020. This error is prejudicial. The amount of time that the plaintiff was left untreated with a broken tibia is the crux of the case, and *is indispensable* for determining whether the defendant's actions were grossly negligent.

This court must conduct its de novo review by assuming the well-pled allegations in the petition to be true, disregarding all allegations not found in

---

[2] Emphasis added; internal citations, quotation marks, and bracketing omitted.

the petition (such as the MRPO's findings of fact), and construing the allegations in the light most favorable to the plaintiff. Given that framework, we hold that a reasonable juror could indeed find that the delay of three days before providing any attention to a patient with a broken leg, despite the nurse assistant hearing and concernedly reporting (though perhaps to the wrong colleague) a popping sound coming from the plaintiff's leg, constitutes prima facie evidence of gross negligence. If the popping sound was sufficient to cause such concern, it was sufficient to require investigation without first waiting three days. Investigation did reveal that the leg was broken and required surgery. The delay of the investigation needlessly left the victim suffering with a broken leg, presumably prolonging her experience of severe pain and suffering resulting from the break.

## CONCLUSION

The judgment of the trial court is **REVERSED and** this matter is **REMANDED** for further proceedings not inconsistent with this opinion. All costs of this appeal are taxed to the defendant.

**ELLENDER, J., concurs in part and dissents in part.**

I respectfully concur in part and dissent in part.

The petition alleged that Ms. Taylor sustained an injury on April 7, 2020. As this was during a period of public health emergency, the healthcare provider shall not be "civilly liable for causing the injury except in the event of gross negligence or willful misconduct." La. R.S. 29:771 (B)(2)(c)(i); *Lathon v. Leslie Lakes Retirement Ctr.*, 54,479 (La. App. 2 Cir. 9/21/22), 348 So. 3d 888, *writ denied*, 22-01566 (La. 12/20/22), 352 So. 3d 80; *McDowell v. Garden Court Healthcare LLC*, 54,645 (La. App. 2 Cir. 8/10/22), 345 So. 3d 506, *writ denied*, 22-01364 (La. 11/16/22), 349 So. 3d 999.

The petition, however, alleged only "general fault and negligence and strict liability" in that a certified nursing assistant "heard a popping noise" from Ms. Taylor's leg and notified the treating nurse but no medical care was provided until three days later. This is a claim of "failure to render services timely," making it a standard malpractice claim. La. R.S. 40:1231.1 (13). Later, the petition alleged damages for "fracturing of [Ms.] Taylor's left leg" but did not allege that this was intentional. This is a claim of "unintentional tort * * * based on * * * health care or professional services rendered, or which should have been rendered," bringing it also under the definition of malpractice. *Id.* These are *not* allegations of gross negligence or willful misconduct. I believe there is no interpretation of the petition that will overcome the immunity of R.S. 27:771. The petition clearly fails to state a cause of action. I find no basis for the majority's assumption that the nurses' conduct constituted "prima facie evidence of gross negligence." I would affirm the judgment insofar as it sustained the exception. This is my

1

opinion without regard to the contents of the MRP report, which was not introduced in evidence.

When the grounds of the peremptory exception may be removed by amendment of the petition, the judgment shall order such amendment within the delay allowed by the court. La. C.C.P. art. 934. I consider it unlikely that the plaintiff can allege any facts that would survive R.S. 29:771, but the opportunity to amend is mandatory. I therefore would amend the judgment to remand for amendment of the petition in accordance with Art. 934.

I therefore concur in part and dissent in part.