LOBRANO, Judge.
This is an appeal from a judgment in favor of JEB Properties, Inc. and against the City of New Orleans dissolving the City’s preliminary injunction and ordering it to issue a building permit for the construction of a garden pavilion on property owned by JEB located at 3029 St. Charles Avenue.
FACTS AND PROCEDURAL HISTORY:
JEB Properties, Inc. (JEB) owns an historic mansion, known as the Elms House, located at 3029 St. Charles Avenue. Joyce Elms Benchabbat resides in the home and is one of the principal shareholders of JEB.
On or about February 22, 1992, JEB, through Mrs. Benchabbat’s son, Thomas Roche, applied for a building permit to construct a garden pavilion (gazebo) in the side yard of the mansion. Attached to JEB’s application was a Certificate of Appropriateness from the Historic District Landmark Commission approving the construction of the pavilion pursuant to architectural plans and renderings submitted by JEB. Construction of the pavilion had already begun. The concrete base and steps had been poured. The Department of Safety and Permits (Safety and Permits) denied JEB’s application stating that “the gazebo would violate the provision of Article 12, Section 5 of the Comprehensive Zoning Ordinance.”
In disregard of the City’s stop work orders, JEB continued construction of the pavilion adding eight columns to the concrete base.
On April 24,1991, the City, through Safety and Permits, sued JEB. for violations of the Zoning Ordinance and requested a temporary restraining order prohibiting any construction on the premises without a permit. On May 3, 1991, the trial court issued a preliminary injunction prohibiting further construction on the premises.
JEB appealed the City’s denial of the permit request to the Board of Zoning Adjustment (BZA). The hearing was held on June 10, 1991. On June 13, 1991, the BZA upheld the decision of Safety and Permits and denied the permit on the basis that the *988 construction of the pavilion would constitute an impermissible expansion or enlargement of the non-conforming use of the premises.
On July 10, 1991, JEB requested that the trial court issue a temporary restraining order prohibiting the City from demolishing the partially completed construction and to review the BZA decision. JEB further requested the trial court order Safety and Permits and the BZA to issue the building permit.
On July 12, 1991, following an “in camera” conference, the trial court ordered the City to show cause why a writ of certiorari in conformity with the requested restraining order should not issue. A subsequent hearing on the writ was held September 4, 1991. Both parties briefed and argued the issues.
On November 4, 1991, the trial court rendered judgment dissolving the previously issued preliminary injunction and ordered the City to issue the building permit. In its reasons for judgment, the court stated:
“The Court finds that 3029 St. Charles Avenue is Ms. Elms’ residence. The Court can find no facts which substantiate the City’s claim that the building of the garden pavilion is an illegal extension or enlargement of its non-conforming use.”
The City appeals this judgment asserting the following assignments of error:
1) The District court erred in its review of the decision of the Board of Zoning Adjustments for the City of New Orleans since a decision of such board can only be overturned if the decision is found to be arbitrary and capricious.
2) The District court erred in denying the City of New Orleans’ motion for new trial where the City of New Orleans was not afforded the opportunity to present evidence at a trial on the merits on its application for permanent injunction.
We hold that the garden pavilion is not an expansion of the property’s non-conforming use status, that it is a permissible accessory use and affirm the trial court.
STANDARD OF REVIEW:
The City asserts the trial court erred by not applying an “arbitrary or capricious” standard of review to the BZA’s decision. In support of this contention, the City cites Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir.1977), writ den. 349 So.2d 885 (La.); certiorari den. 434 U.S. 1068, 98 S.Ct. 1248, 55 L.Ed.2d 770 (1978). Gertler, however, addressed the BZA’s discretionary power in determining whether the property at issue maintained its legal non-conforming status at the time the Gertler’s purchased the property. In discussing the function of a writ of certio-rari to review a decision of the BZA, this Court, citing White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971), stated:
“Ordinarily, review of administrative rulings does not even allow the trial court or this court to make independent findings of fact in the record, unless there is a showing that the findings of fact were arbitrary and unreasonable and made without substantial evidence.
* Jfc * * *
... where the agency has the opportunity to judge [of] sic the credibility of witnesses by first hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.” at p. 234.
In the instant case, the issue before the trial court was a question of law, not fact. The legal issue is whether the pavilion constitutes an illegal expansion of a legal nonconforming use as defined by the Comprehensive Zoning Ordinance. Although the City asserts BZA’s decision was made after findings of “substantial evidence” and should be reversed, there is no real dispute of fact. A permit for a gazebo was applied for and denied as violating Article 12, Section 5 of the Zoning Law. The issue is whether the BZA was correct in interpreting and applying this section of the zoning law.
*989 LEGAL NON-CONFORMING USE:
In City of New Orleans v. Elms, 566 So.2d 626 (La.1990), the Supreme Court recognized the legal non-conforming use of 3029 St. Charles Avenue, a private residence, for wedding receptions, private parties and public tours.
The Comprehensive Zoning Ordinance for the City of New Orleans, in Article 12, Section 5, provides:
“A building or land which does not conform to the use regulations of the district in which it is located (non-conforming by use), shall not be extended or enlarged by the attachment of signs to the building, or by the placement of signs or display materials on land outside of the building, or by the attachment of racks, balconies, or other projections from the building, or in any other manner, except when required by law or ordinance. Buildings which are non-conforming only as to height, floor area ration, yard areas, lot area per family, or parking may be maintained, structurally altered or increased in cubical content, provided such alteration or increase in cubical content shall not further increase the extent of the non-conformance or permit an increase in the number of dwelling units. Limitations as to cubical content and increase in floor area shall not apply to existing industrial uses in the Vieux Carre.”
We agree with the legal principal that a non-conforming use cannot be expanded. Redfearn v. Creppel, 455 So.2d 1356 (La.1984). However, Article 12, Section 5, does not expressly prohibit an increase in the amount of use within the same non-conforming area. A zoning ordinance, being in derogation of the property rights of private ownership, must be construed to allow the least restrictive use of the property. City of New Orleans v. Elms, supra.
Ordinances forbidding the enlargement or extension of a non-conforming use do not prevent the presence of additional structures on the non-conforming tract.[1] This is best exemplified by the court’s holding in City of Crowley v. Prejean, 173 So.2d 832 (La.App. 3rd Cir.1965), writ den., 247 La. 878, 175 So.2d 110 (1965). In allowing the landowner to place additional trailers on his tract without expanding its nonconforming status, the court held:
“The general rule is that ‘... the rule forbidding the enlargement or extension of a nonconforming use does not prevent an increase in the amount of use within the same area, so that a nonconforming use may be not only continued but also increased in volume and intensity. A nonconforming use is not limited to the precise magnitude thereof which existed at the date of the ordinance....’ 101 C.J.S. Zoning Sec. 193 at p. 955. to the same effect is 8 McQuillin, The Law of Municipal Corporations, 3rd ed., 1957, Section 25.207, in which the statement is found, p. 520, ‘The prohibition of a zoning ordinance is directed to new uses; it imposes no restraint upon broadening the scope of an existing use.’ ” at p. 836.
The holding in Crowley, while less restrictive (does not prohibit an increase in use), reflects the prevailing national rule that the addition of new facilities or the enlargement of existing ones is a prohibited expansion or extension of thé non-conforming use if it is incompatible with the permitted use or if the nature of the use substantially changes. R. Anderson, American Law of Zoning 3rd Sec. 6.47, at 589 (1986). In determining if there has been an enlargement of the non-conform *990 ing use of a tract, the following criteria has been espoused:
1) The extent to which the current use reflects the nature and purpose of the original use;
2) Whether the use is different in character, nature, and kind;
3) Whether the current use has a substantially different effect upon the neighborhood; and
4) Whether the current use is a drastic enlargement or extension of the original use.
G.P. Rohan, Zoning and Land Use Controls, Sec. 41.03[3], at 41-81 (1989), citing McKemy v. Baltimore County, 39 Md. App. 257, 385 A.2d 96 (1978).
In the instant case, the entire tract of land bearing municipal address 3029 St. Charles Avenue possesses non-conforming use status and the construction of the garden pavilion is within that tract. The record reflects that the pavilion is to be constructed in the side yard, will replace a wooden gazebo which deteriorated with age and will be used for parties, weddings and other social affairs in keeping with its non-conforming use as a reception hall. In addition, neither the residential nor commercial use of the property will be drastically enlarged or extended, changed in nature, character or quality by the addition of the pavilion nor will it substantially affect the neighborhood. In fact, the architectural plans and drawings submitted to the Historic District Landmarks Commission shows the pavilion will serve to beautify the property. We conclude the proposed pavilion is not a violation of Article 12, Section 5 of the Comprehensive Zoning Law.
JEB also argues that the garden pavilion qualifies as an “accessory use” both in relation to its permissible use as a residence and in relation to its commercial use as a reception hall. We agree.
The Comprehensive Zoning Ordinance of the City of New Orleans defines the following as:
Accessory Building. A subordinate building, attached to or detached from the main building, the use of which is incidental to that of the main building and not used as a place of habitation except by domestic servants employed upon the premises. Article 14, Sec. 2.1. Accessory Use. A subordinate use which is incidental to the customary or necessary in connection with the main building or use and which is located at the same lot with such main building or use. Article 14, Sec. 2.2.
Building. Any structure designed or built or used for the support, enclosure, shelter or protection of persons, animals, chattels, or property of any kind. Article 14, Sec. 2.13.
The law relative to “accessory use” was definitively addressed in Redfearn v. Creppel, supra. In Redfeam, the Supreme Court held that the conversion of an area of a hotel into a bar and meeting rooms was permissible as an accessory to the existing non-conforming use as a hotel and restaurant. In so finding, the Court, in referring to Article 14, Section 2.2 stated:
“This section summarizes and alludes to most of the precepts which have been employed by courts in determining whether a particular use is accessory to either a permitted use or a nonconforming use. Some zoning ordinances permit accessory uses only in relation to permitted, not nonconforming uses. County of Ada v. Schemm, 96 Idaho 396, 529 P.2d 1268 (1974); Anderson, supra Sec. 6.38. The New Orleans ordinance, however, tacitly recognizes accessory uses in relation to both. The traditional purpose of zoning is to reduce or eliminate the adverse effects of one type of land use or another by segregating different uses into different zoning districts. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 387-95, 47 S.Ct. 114, 118-21, 71 L.Ed. 303 (1926); 1 R. Anderson, supra Sec. 8.14-15; Note, ‘Customary’ Requirement For Accessory Uses, 56 B.U.L.Rev. 542, 547 (1976). Accessory uses are permitted exceptions only to the extent that this purpose is not frustrated. When an accessory use would adversely affect a locality, courts have generally interpreted zoning ordinances to prohibit the use. *991 See Pratt v. Building Inspector, 330 Mass. 344, 346-47, 113 N.E.2d 816, 817 (1953); Gray v. Ward, 74 Misc.2d 50, 56, 343 N.Y.S.2d 749, 755 (Sup.Ct.1973), aff'd mem., 44 App.Div.2d 597, 354 N.Y.S.2d 591 (1974). Consequently, when the full definition of an accessory use is spelled out, including the provisions which must be inferred from the basic purpose of the zoning ordinance, we believe it closely resembles Professor Williams’ definition, under which accessory uses must meet the following tests:
1) They must be related to the principal use (usually not explicitly stated, but implied).
2) They must be subordinate and clearly incidental to the principal use (almost always stated).
3) They must also be customarily incidental (almost always stated).
4) They must be located on the same lot as the principal use (almost always stated) — and, occasionally, must also be in the same ownership.
5) They must not alter the character of the area or be detrimental thereto (occasionally stated).” Id. at p. 1360.
The record before us demonstrates that the garden pavilion falls within the above precepts as a permissible accessory use. The pavilion is subordinate and clearly incidental to the existing non-conforming use; it is located at the same municipal address as the main structure and is consistent with and not detrimental to the character of the area.
In view of our holding it is not necessary to address the City’s second assignment of error. It would be a waste of judicial time to order a trial on the merits of the permanent injunction. The City’s denial of the permit was error and a misapplication of its own zoning ordinance.
For the above and foregoing reasons, the judgment is affirmed. Appellant to pay all costs of this appeal.
AFFIRMED.

. In Irby v. Panama Ice Company, 184 La. 1082, 168 So. 306 (1936), the addition of a water tower and additional concrete foundations to a non-conforming tract used as an ice plant did not constitute an "expanded sue” or "structural alteration”. In Adrouny v. International City Bank, 266 So.2d 524 (La.App. 4th Cir.1972), writ den. 263 La. 365, 268 So.2d 257 (1972), the addition of pneumatic tubes connecting a bank located on a non-conforming tract with the drive-in tellers located on another tract did not constitute an extension or expansion of a nonconforming use. In Truly v. Nielsen, 121 So.2d 754 (La.App. 2nd Cir.1960), addition of brick veneer, a redwood fence and interior repairs to a non-conforming tract used as a beauty salon as well as an increase in business did not violate the ordinance forbidding expansion of a nonconforming use.