JAMES F. MCKAY III, Chief Judge.
_JjThis appeal arises out of a zoning dispute. Mannino’s P & M Texaco Service Center, Inc. (“plaintiff’) seeks review of the October 24, 2014 trial court judgment, affirming the Board of Zoning Adjustments’ (“BZA”) decision to deny plaintiffs request to sell high alcohol content beverages. For the reasons set forth below, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Plaintiff operates a gas station and convenience store at 1139 N. Rampart Street in New Orleans, which is located in the Historic Marigny/Treme’ Commercial District (“HMC-2”). For many years, plaintiff has sold low alcohol content beverages, i.e., beer, pursuant to a non-conforming use status.[1] In order to expand sales to include high alcohol content beverages, plaintiff was referred to the Department of Safety and Permits (“Department”) for a determination as to whether the business was properly zoned for such sales.
On March 4, 2013, the Department issued a verification letter stating that pursuant to Sections 9.4.4 and 9.4.5 of the City of New Orleans Comprehensive | ¡.Zoning Ordinance (“CZO”), a business such as plaintiffs, located in HMC-2, is required to have at least 5,000 square feet of floor area in order to sell package liquor, i.e., high alcohol content beverages. Plaintiffs business has less than 2,000 square feet of floor area. The Department determined that plaintiff “enjoys legal, non-conforming status as to low-content alcohol sales and that this nonconforming [status] cannot be expanded to include high-content alcohol. It has been a long-standing position of this Department to differentiate the types of alcohol license for which a location can be considered legally non-conforming.” The Department concluded that “[t]o approve of such a use would allow the intensification of a non-conformity in direct conflict with the clear language of the CZO.”
Plaintiff appealed the Department’s decision to the BZA. Following a public *1188 hearing, the BZA denied the appeal and upheld the decision of the Department. Thereafter, a petition for judicial review was filed in the Civil District Court for the Parish of Orleans.
On October 24, 2014, the trial court rendered judgment affirming the decision of the BZA. The trial court concluded that the sale of high alcohol content beverages is neither a permitted use nor an accessory-use for a retail store located in HMC-2 having less than 5,000 square feet of floor area. It was further determined that plaintiffs sale of low alcohol content beverages is a non-conforming use, and that the CZO does not allow for an intensification of the non-conforming use to permit the sale of high alcohol content beverages. The trial court rejected plaintiffs argument that the law does not distinguish between the sale of low alcohol content beverages and high alcohol content beverages. In |aconclusion, the trial court held that plaintiff failed to rebut the presumption of validity, which is afforded to decisions of the BZA.
On appeal to this Court, plaintiff asserts the following assignments of error on the part of the trial court:
1. considering there to be a distinction in the CZO between the sale of low alcohol content and high alcohol content beverages;
2. considering a provision of the CZO regarding an accessory use to be read independently from the corresponding permitted uses in a zoning classification;
3. interpreting CZO § 9.4.4 to require retail stores to have a minimum of 5,000 square feet of floor area in order to sell package liquor;
4. considering the alleged intensification of a non-conforming use to be an illegal expansion of a non-conforming use;
5. making a finding of fact that is unsupported by the record, that the character of the neighborhood would change if plaintiff was permitted to sell high alcohol content beverages; and
6. concluding that plaintiff was required to file a “change of use” application with the City.
STANDARD OF REVIEW
The standard of review in zoning disputes was set forth in Toups v. City of Shreveport, 2010-1559, pp. 3-4 (La.3/15/11), 60 So.3d 1215, 1217-18, as follows:
Because zoning falls under the jurisdiction of the legislature, courts will not interfere with their prerogative unless the action is palpably erroneous and without any substantial relation to the public health, safety, or general welfare. King v. Caddo Parish Commission, 97-1873 (La.10/20/98), 719 So.2d 410. The terms “arbitrary and capricious” mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. However, when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached. Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659, 664 (La.1974).
Generally, the action of a governmental body is arbitrary and capricious and unreasonable if it bears no relation to the health, safety, or general welfare of the public. King, 97-1873 at pp. 14-15, 719 So.2d at 418; Papa v. City of Shreveport, 27,045 at p. 6 (La.App. 2 Cir. 9/29/95), 661 So.2d 1100, 1103.
*1189 A challenge to a zoning decision in Louisiana is a de novo proceeding on the' issue of whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without j4due process of law. Palermo Land Co., Inc. v. Planning Com’n of Calcasieu Parish, 561 So.2d 482, 492 (La.1990). Whether an ordinance bears the requisite relationship to the health, safety, and welfare of the public is a factual question which must be determined from the evidence in the record. The property owner has the burden to establish by a preponderance of the evidence that the decision by the governmental body to deny the variance has no substantial relationship to public health, safety, morals, or general welfare of the municipality. Id. at 493.
LAW AND ANALYSIS
In pertinent part, La. R.S. 33:4721- sets forth the zoning powers of municipalities as follows:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict ... the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.
The issue to be resolved in this appeal is whether the BZA’s decision to deny plaintiffs request to sell high alcohol content beverages was arbitrary and capricious. To do so, we consider whether the BZA’s action was reasonable under the circumstances and consistent with the principals set forth in La. R.S. 33:4721.
At the outset, we find no merit in plaintiffs argument that the law does not distinguish between the sale of low and high alcohol content beverages. While we acknowledge that the CZO does not define the types of alcohol, it is clear that the jurisprudence makes a distinction as it applies to zoning disputes.[2]
In Toups, supra, which the trial court correctly relied upon, the Supreme Court recognized a difference between high and low alcohol content beverage sales in connection with a zoning dispute. The Shreveport City Council denied Mr. Toups’ request for a special exception use permit for a proposed store that would sell packaged liquor, wine, and beer. In ruling that the city council’s denial of the permit was not arbitrary and capricious and was “reasonably related to promoting the public’s health, safety, and/or general welfare”, the Court stated: “We recognize the evidence in the record establishes that three other stores in this same area have special exception uses to sell alcohol. However, these businesses currently have the ability to sell only beer and wine, whereas Mr. Toups’ store would also sell liquors such as bourbon, vodka, and rum.” Toups, 2010-1559, p. 6, 60 So.3d at 1219.
In line with Toups, the BZA and the trial court properly determined that in the *1190 context of a zoning dispute, the sale of high alcohol content beverages differs in nature, purpose or character from the sale of low alcohol content beverages. Moreover, when considering the use of property located in an historic zoning district, such a distinction is not unreasonable.
Plaintiffs gas station and convenience store is located in the Historic Marig-ny/Treme’ Commercial District, HMC-2. This district permits “more intensive commercial uses” than the adjacent HMC-1 district, while protecting the “historic character” of the area. See CZO Sec. 9.5.1. The CZO governs the manner in which property may be used and designates the permitted, accessory, and conditional uses that are authorized in HMC-2. See CZO Sec. 9.5.2.
Retail shops, except package liquor stores, with less than 2,000 square feet of floor area, is a permitted use in HMC-1. See CZO Sec. 9.4.3. This type of retail | sshop is also a permitted use in HMC-2, but without the floor area restrictions found in HMC-1. See CZO Sec. 9.5.3. Thus, the sale of package liquor in retail stores is not a permitted use in HMC-2.
Pursuant to CZO Sec. 9.5.4, any accessory use authorized in HMC-1 is also authorized as an accessory use in HMC-2. CZO Sec. 9.4.4 provides for the following accessory use in HMC-1 (and HMC-2): “Package liquor sales in retail stores, shops, drugstores with pharmacies and in grocery stores occupying more than 5,000 square feet of floor area....” The 5,000 square foot requirement applies in both HMC-1 and HMC-2. Thus, as the trial court correctly determined, the CZO requires all establishments located in HMC-2 to have at least 5,000 square feet of floor area in order to sell package liquor as an accessory use. Plaintiff does not meet this criteria. Thus, the sale of package liquor is not a proper accessory use for a retail store of plaintiffs size located in HMC-2.
Plaintiffs request to sell high alcohol content beverages was rejected by the BZA as an illegal expansion of a nonconforming use. The trial court affirmed this ruling, finding that the addition of such sales would constitute an impermissible intensification of the non-conforming use.
Plaintiff maintains that (assuming for the sake of argument that the sale of low alcohol content beverages is not a permitted accessory use, but a legal nonconforming use) the sale of high alcohol content beverages would not enlarge that non-conforming use. In support of this argument, plaintiff relies on City of New Orleans v. JEB Properties, Inc., 609 So.2d 986 (La.App. 4th Cir.1992).
In JEB Properties, this Court recognized the legal principal that a nonconforming use cannot be expanded. Id. at 989 (citing Redfearn v. Creppel, 455 So.2d 1356 (La.1984)). The Court considered the following criteria in determining if there has been an enlargement of the non-conforming use:
1) The extent to which the current use reflects the nature and purpose of the original use;
2) Whether the use is different in character, nature, and kind;
3) Whether the current use has a substantially different effect upon the neighborhood; and
4) Whether the current use is a drastic enlargement or extension of the original use.
Id. at 990.
Here, plaintiff submits that the Director and the BZA erred in not considering the criteria set forth in JEB Properties. The crux of plaintiffs argument is that the sale of high alcohol content beverages is the *1191 same character, nature,' and purpose as the original use, and it will have no adverse effect on the neighborhood. We find no merit in this argument. It is evident from the record that the Director and the BZA considered the sale of high alcohol content beverages to be an illegal intensification of a non-conforming use because it was in fact different in character, nature, and kind from the original use. As noted here-inabove, the holding in Toups, supra, supports this finding.
In rejecting plaintiffs appeal to add high alcohol content beverages, the trial court recognized that the CZO allows for changes of use, but that the general rules do not apply to the HMC-2. In making this determination, the trial court cited the following sections of the CZO, which provide in pertinent part:
In all districts, except the Vieux Carre’ Districts and the Historic Marig-ny/Treme’ Districts, if no structural alterations are made, a non-conforming use of a building may be changed to another non-conforming use of the same or more restrictive classification, provided that the new nonconforming use is not more intensive than the prior use. Whenever a nonconforming use of a building has been changed to a more restrictive use, such use shall not thereafter be changed to a less restrictive use.
IsCZO Sec 13:4.1
In Historic Marigny/Treme’ districts, if no structural alterations are made, a nonconforming use located in the HMR, MHC and HMLI districts may be changed to another nonconforming use; however, such change shall be limited to the uses permitted in the HMR and HMC-1 districts.[3]
CZO Sec. 13.4.2
Our de novo review of the record demonstrates that pursuant to the clear language of the CZO, the sale of high alcohol content beverages in a retail store such as plaintiffs is neither a permitted nor an accessory use in HMC-2. Moreover, we find that plaintiffs request to sell high alcohol content beverages was properly denied as an impermissible intensification of a non-conforming use. Clearly, the decision of the BZA is consistent with promoting health, safety, morals and/or the general welfare of the community and the jurisprudence cited herein. As the Supreme Court stated in Toups, 2010-1559, p. 5, 60 So.3d at 1218 (quoting TSC, Inc. v. Bossier Parish Police Jury, 38,717 (La.App. 2 Cir. 7/14/04), 878 So.2d 880), it “is not within the province of the appellate court to second guess a zoning decision that appears to have been based on appropriate and well-founded concerns for the public.”
CONCLUSION
After considering the applicable provisions of the CZO and the jurisprudence, we find no basis to conclude that the BZA was arbitrary and capricious in its ruling. Accordingly, we affirm the judgment of the trial court and uphold the ruling of the BZA.
AFFIRMED

. Nonconforming use of property is ''[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated.” Redfeam v. Creppel, 455 So.2d 1356, 1358 (La.1984).

. We also note that Section 10-1 of the New Orleans Code of Ordinances defines high alcohol content beverages as containing more than six percent alcohol by volume, and low alcohol content beverages as containing not more than six percent alcohol by volume.

. The permitted uses of the HMR and HMC-1 do not include the sales of package liquor. See CZO Sec. 8.2.3 and Sec. 9.4.3.