| | | |
|---|---|---|
| **SUZANNE WIMSATT** | * | **NO. 2019-CA-0461** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **CITY OF NEW ORLEANS** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03771, DIVISION "J"
Honorable D. Nicole Sheppard
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

Michael J. Laughlin
ASSISTANT CITY ATTORNEY
Kimlin S. Lee
DEPUTY CITY ATTORNEY
Churita H. Hansell
CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
SENIOR CHIEF DEPUTY CITY ATTORNEY
Sunni J. LeBeouf
CITY ATTORNEY
1300 Perdido Street
City Hall - Room 5E03
New Orleans, LA 70112

     COUNSEL FOR DEFENDANT/APPELLANT

Eric Oliver Person
1539 Jackson Avenue, Suite 100
New Orleans, LA 70130

     COUNSEL FOR PLAINTIFF/APPELLEE

     **REVERSED IN PART; VACATED IN PART; REMANDED**

       **DECEMBER 20, 2019**

In this zoning case, defendant/appellant, City of New Orleans (the "City"), appeals the February 28, 2019 judgment of the district court, which denied several exceptions filed by the City and granted a preliminary injunction in favor of plaintiff/appellee, Suzanne Wimsatt ("Wimsatt"). The preliminary injunction prohibited the City from enforcing a May 9, 2018 administrative judgment from the Department of Safety and Permits, which imposed fines on Wimsatt for violating a city zoning ordinance relative to excessive paving in her front yard and ordered her to remove the excessive paving. For the reasons that follow, we reverse the denial of the City's exception of no cause of action; vacate the remainder of the judgment; and remand this matter to the district court.

This litigation pertains to Wimsatt's short term rental property on Peniston Street in uptown New Orleans, where the front yard is 100% paved. The parties dispute how much of this concrete paving preexisted Wimsatt's purchase of the property and for what period of time.

1

Wimsatt purchased the property via tax sale[1] and undertook construction to convert the property from a triplex to a duplex. Following construction, the City issued Wimsatt a certificate of occupancy and completion on December 1, 2016. A second certificate was issued on April 6, 2017. On that date, Wimsatt's property manager, Nidal Jaber ("Jaber"), applied for a short term rental permit and was advised by City staff that a neighbor had complained about the front yard paving, such that the property had been "flagged" for noncompliance with the City's Comprehensive Zoning Ordinance ("CZO"). In an effort to avoid delay on the permit's issuance, Jaber paid, on Wimsatt's behalf, a fine of $7,920.00.[2] On May 24, 2017, the City issued Wimsatt a short term rental permit, which expired on April 19, 2018.

On March 12, 2018, the City's Department of Safety and Permits issued Wimsatt a notice that the City had inspected her property and cited her for violating CZO, § 11.3.A.1, Table 13.2, which provides that the maximum impervious surface area of the front yard may not exceed 40%. The notice instructed Wimsatt to remedy the condition within 10 days and contact the City to schedule a re-inspection. On April 3, 2018, the Department of Safety and Permits issued Wimsatt a notice of administrative hearing regarding the CZO violation, setting the hearing on April 18, 2018.

---

[1] The tax sale took place on October 22, 2015, while the Tax Certificate of conveyance was executed on February 2, 2016.

[2] The City claims that this amount was a post-demolition permit fee, as the scope of Wimsatt's construction exceeded her building permit.

On April 17, 2018, Wimsatt filed a "Petition for Injunctive Relief" ("first petition") in the district court, seeking removal of the City's "flag" on her property such that she could renew her short term rental permit, and enjoining the Department of Safety and Permits from holding the hearing. Wimsatt alleged that her income depends on the permit to operate her short term rental property, and that the "flag" on her property prevents her from renewing the permit. She annexed to her first petition the affidavits of several neighbors attesting that "prior to the acquisition of the property by Ms. Wimsatt from the City of New Orleans the yard surrounding the home was concreted in the same manner that it is now."

On April 20, 2018, the City filed an exception of prematurity on the basis that Wimsatt had not yet exhausted her administrative remedies, as there had not yet been any administrative hearing. The district court agreed and, on May 23, 2018, granted the City's exception and dismissed Wimsatt's first petition without prejudice.

Meanwhile, on May 9, 2018, the administrative hearing went forward, at which an administrative judgment was rendered, finding Wimsatt in violation of CZO, § 11.3.A.1, Table 13.2 for having paved more than 40% of her front yard with an impervious surface. The judgment ordered Wimsatt to remove the excess paving within 30 days and assessed her with a fine of $500.00, a hearing cost of $75.00, plus, after the 30-day abatement period, an additional penalty of $100.00 per day, until the violation is corrected, for a period of up to one year.

3

Wimsatt appealed the administrative decision to the Board of Zoning

Adjustments ("BZA"), which held a hearing on August 13, 2018. While the record

before this Court does not contain a complete record of the administrative or BZA

proceedings, the City contends that Wimsatt's only argument to the BZA was that

her property had attained "legal, non-conforming status" for pavement exceeding

the CZO allowance.[3] On August 23, 2018, the BZA filed its "Disposition of

Zoning Case," which denied Wimsatt's appeal.

On September 13, 2018, Wimsatt filed a "Petition for Temporary

Restraining Order" ("second petition"), contending that her request for injunctive

relief against the City was no longer premature.[4] She alleged that the City

determined that the property "had not achieved non-conforming status," that she

"appealed via hardship appeal process" to the BZA, and that her "hardship appeal"

was "unsuccessful." Wimsatt alleged that the fines assessed in the administrative

judgment are "immediately due, unless enjoined by Court Action." She stated that

she will suffer irreparable injury to her "economic survival" if her certificate of

occupancy and completion is revoked, her property is removed from the short term

rental program, and the administrative fines are upheld. Wimsatt claimed that she

---

[3] "[A] legal nonconforming use is one 'which was lawful prior to the enactment of a particular zoning regulation and which is continued after the effective date of the regulation, although the continued use violates the new zoning restrictions for the district in which the property is situated.'" *Phillips' Bar & Rest., Inc. v. City of New Orleans*, 12-1396, p. 13 (La. App. 4 Cir. 4/24/13), 116 So.3d 92, 101 (quotation omitted). "Nonconforming use status is designed to protect those uses which were legally established before the enactment of a restrictive regulation." *Id.* "A governing authority may, however, lose the right to prohibit a given nonconforming use through the operation of prescription." *Id.*, 12-1396, p. 14, 116 So.3d at 101. Under La. R.S. 9:5625(G), an action to enforce a zoning violation in an historic district prescribes "ten years from the first act constituting the commission of the violation."

[4] The second petition annexed and incorporated the allegations of the first petition.

is entitled to injunctive relief ordering the City to remove the "flag" on the property, and enjoining the City from enforcing the May 9, 2018 administrative judgment or interfering with Wimsatt's renewals of short term rental permits or certificates of occupancy and completion. On September 17, 2018, the district court granted a temporary restraining order ("TRO") enjoining the City from enforcing the administrative judgment.

On September 27, 2018, Wimsatt filed a "Supplemental Pleading in Support of Injunctive Relief" in which she stated that she had obtained the expert opinion of an engineer, who opined that removing the concrete was likely to damage the structure of the home. On September 28, 2018, the City filed a motion to dissolve the TRO. On October 2, 2018, the City filed exceptions of lack of subject matter jurisdiction, prescription, no cause of action, and res judicata.

A hearing on the motion, exceptions, and preliminary injunction went forward on October 4, 2018, at which Wimsatt, her engineer expert witness, and the City's chief zoning official, as custodian of records for the Department of Safety and Permits, each testified. On February 28, 2019, the district court rendered judgment dissolving the TRO, denying the City's exceptions, and granting a preliminary injunction in favor of Wimsatt and against the City as follows:

> …enjoining and prohibiting the City [] from enforcing its May 9, 2018 Administrative Judgment against [Wimsatt] … in the amount of $575.00 in addition to $36,500.00 in daily fines as to [Wimsatt's] property … for a period of one hundred eighty (180) days from date of this Judgment, and during which time the parties are encouraged to attempt to resolve the competing problem of maintaining an

impervious surface area for more than 40% of the front yard … versus the harm that would result to the home at this location from the removal of all of the concrete in excess of 40% of the surface area.

The City appeals this judgment.

As an initial matter, this Court ordered the City to submit a brief addressing whether this appeal is and/or became moot when the preliminary injunction expired after 180 days. We do not find this appeal moot, as a justiciable controversy remains between Wimsatt and the City, which has yet to be decided in a trial on the merits.[5] Instead, we find that the district court erred by limiting the application of the preliminary injunction to 180 days. "It is well-recognized that preliminary injunctions are an interlocutory ruling 'designed to preserve the status quo as it exists between the parties, pending trial on the merits.'" *Hyman v. Puckett*, 15-0930, p. 11 (La. App. 4 Cir. 5/4/16), 193 So.3d 1184, 1191 (citation omitted).

At least one Louisiana court recognized that it is error to grant a preliminary injunction set to expire before the trial on the permanent injunction and ruling thereon, "the practical effect of which was *both* to grant and to deny the request for a preliminary injunction[.]" *Equitable Petroleum Corp. v. Cent. Transmission, Inc.*, 431 So.2d 1084, 1087-88 (La. App. 2d Cir. 1983)(emphasis in original). As the *Equitable* court explained:

> When a preliminary injunction is requested incidental to a suit for a permanent injunction the trial judge has two alternatives. If the

---

[5] "A 'justiciable controversy' connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of a conclusive character." *Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 98-0601 (La. 10/20/98), 720 So.2d 1186, 1193 (citations omitted).

6

applicant has not made out a prima facie case for a permanent injunction, the demand for a preliminary injunction should be denied. If the applicant has made a prima facie [case] for a permanent injunction, the preliminary injunction should be granted, maintaining the status quo until the merit-trial and decision thereon. To issue a preliminary injunction specified to expire prior to the trial on the merits is contradictory on its face—indicating by its granting the trial judge's determination that the applicant will probably prevail on the merits, but by its time limitation that the absence of irreparable injury at the time of the merit-trial will preclude a permanent injunction.

*Id.* We agree with this reasoning, and we find that the district court erred as a matter of law in granting a preliminary injunction, which expired by its own terms prior to the trial on the permanent injunction. Nevertheless, for the reasons described herein, we vacate the preliminary injunction as we find that Wimsatt failed to state a cause of action.

Addressing the merits of the appeal, the City sets forth two assignments of error as follows:

1. The trial court erred in overruling the City's Exceptions of Lack of Subject Matter Jurisdiction, Prescription, No Cause of Action, and Res Judicata or Issue Preclusion.

2. The trial court erred in granting Ms. Wimsatt's petition for preliminary injunction because she failed to demonstrate that she would otherwise suffer irreparable harm or that she would likely prevail on the merits.

The central question in this appeal is whether Wimsatt failed to state a cause of action in her second petition.[6] Appellate courts review an exception of no cause

---

[6] The denial of "an exception of no cause of action is an interlocutory judgment and not a final judgment." *Llopis v. State*, 16-0041, p. 3 (La. App. 4 Cir. 12/14/16), 206 So.3d 1066, 1068. "When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment." *Favrot v. Favrot*, 10-0986, p. 2, n. 1 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102. *See also Maqubool v. Sewerage & Water Bd. of New Orleans*, 18-0572, p. 3 (La. App. 4 Cir. 11/14/18), 259 So.3d 630, 632 (recognizing that "an appeal can be taken from an order or judgment relating to a preliminary or final injunction as a matter of right" and stating that "[a]lthough the partial grant of the preliminary injunction is the only appealable portion of the judgment in this matter, the appellant is entitled to have this Court review the interlocutory portions of the judgment.").

of action *de novo*, as it presents a legal question; more specifically, "an exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition." *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612, p. 7 (La. 3/17/06), 929 So.2d 1211, 1217. "The exception is triable on the face of the petition and, to determine the issues raised by the exception, each well-pleaded fact in the petition must be accepted as true." *Id.* Ordinarily, "no evidence may be introduced to support or controvert the exception of no cause of action." *Maw Enterprises, L.L.C. v. City of Marksville*, 14-0090, p. 7 (La. 9/3/14), 149 So.3d 210, 215. However, the jurisprudence has recognized an exception to this rule, and "a court may consider evidence admitted without objection to enlarge the pleadings." *Id.*

The City argues, in part, that Wimsatt is not entitled to collaterally attack the administrative judgment via injunction where she has failed to appeal the administrative judgment. The City cites to Chapter 2, Article II, Section 6-41 of the City Code, which provides for a direct appeal to the district court of an administrative judgment finding a code violation, as follows:

> Any person determined by the hearing officer to be liable for a code violation may appeal the determination to the civil district court for the parish. Such appeal shall be instituted by filing, within 30 calendar days of the mailing of the hearing officer's order, a petition with the clerk of the civil district court along with payment of such costs as may be required by the clerk of court. …

M.C.S., Ord. No. 25455, § 1, 8-22-13; M.C.S., Ord. No. 26513, § 1, 7-23-15.

8

Wimsatt did not avail herself of this remedy. Instead, Wimsatt appealed the administrative judgment to the BZA under a separate procedure, afforded under La. R.S. 33:4727(C)(2)(a), as follows:

> Appeals to the board of adjustment [BZA] may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. Appeals shall be taken within a reasonable time, as provided by the rules of the board, by filing with the officer from whom the appeal is taken, and with the board of adjustment a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken, after all transcript costs and all other costs of appeal are paid by the person or entity taking the appeal, the appellant.

"The BZA Rules of Procedure and Policy art. II, § 6 provides that every appeal 'shall be taken within forty-five (45) days' from the date of a decision or determination by the Director of DSP [the Department of Safety and Permits]." *Palm Air Civic Ass'n, Inc. v. Syncor Int'l Corp.*, 95-0934, p. 3 (La. App. 4 Cir. 1/19/96), 667 So.2d 1185, 1187.

La. R.S. 33:4727(E)(1) further provides the mechanism for an aggrieved person to seek district court review of adverse decisions of the BZA, stating that:

> Any person or persons jointly or severally aggrieved by any decision by the board of adjustment of any officer, department, board, or bureau of the municipality, may present to the district court of the parish or city in which the property affected is located a petition, duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

Nothing in this statute provides for injunction; likewise, nothing in the statute provides that district court review of BZA decisions is an aggrieved

9

property owner's exclusive remedy. Certain cases have permitted aggrieved property owners to file a request for injunction along with a petition for district court review of a BZA decision. *See, e.g., C. Napco, Inc. v. City of New Orleans*, 06-0603, p. 7 (La. App. 4 Cir. 3/7/07), 955 So.2d 155, 160, *on reh'g* (5/4/07); *City of New Orleans v. JEB Properties, Inc.*, 609 So.2d 986, 988 (La. App. 4th Cir. 1992).

We find neither any statute nor any reported case, however, which allowed an aggrieved property owner an injunction against enforcement of a BZA decision, where that property owner has not also petitioned for district court review of the underlying BZA decision under La. R.S. 33:4727. Importantly, Subsection E "require[s]" that the petition must "allege that the BZA acted illegally and specify the grounds for the illegality." *Cupit v. City of New Orleans ex rel. Bd. of Zoning Adjustments*, 12-1708, p. 8 (La. App. 4 Cir. 7/17/13), 120 So.3d 862, 866 (quoting *Carrollton/Riverbend Neighborhood Ass'n v. The City of New Orleans*, *unpub.*, 11-1737, p. 5 (La. App. 4 Cir. 6/27/12),  2012 WL 4760796).

Wimsatt's second petition lacks any request seeking district court review of the BZA's decision. In the second petition, Wimsatt alleges only that her appeal was "unsuccessful" and that enforcement of the underlying administrative judgment will cause her irreparable harm. However, Wimsatt fails to allege that the BZA's decision is illegal and does not identify any specific grounds of the "illegality."

The BZA decision was attached to the City's exception and admitted without objection. This decision, denying Wimsatt's appeal, indicates that Wimsatt disputed the administrative determination that her property had "not attained legal, non-conforming status for excessive paving and parking." Wimsatt never alleges, however, that the BZA's denial of her appeal, rejection of the non-conforming status argument, or any particular grounds for her appeal's denial, was illegal.

The second petition also characterizes the BZA proceeding as a "hardship appeal." We recognize that the CZO "provides for variances when necessary and appropriate 'to afford an applicant relief from the requirements of the letter of the Zoning Ordinance when unnecessary hardship or practical difficulty exists.'" *O'Brien v. Bd. of Zoning Adjustments for City of New Orleans*, 15-0169, p. 4 (La. App. 4 Cir. 10/7/15), 177 So.3d 738, 740 (quoting CZO, § 14.6.1).[7] Nevertheless,

---

[7] To grant the variance, the BZA must find that all of the following nine requirements are met:

1. Special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning district.
2. Literal interpretation of the provisions of this Ordinance would deprive the applicant of rights commonly enjoyed by other properties in the same district under the terms of this Ordinance.
3. The special conditions and circumstances do not result from the actions of the applicant or any other person who may have or had interest in the property.
4. Granting the variance requested will not confer on the applicant any special privilege which is denied by this Ordinance to other lands, structures, or buildings in the same district or similarly situated.
5. The variance, if granted, will not alter the essential character of the locality.
6. Strict adherence to the regulation for the property would result in a demonstrable hardship upon the owner, as distinguished from mere inconvenience.
7. The purpose of the variance is not based exclusively upon a desire to serve the convenience or profit of the property owner or other interested party(s).
8. The granting of the variance will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.
9. The proposed variance will not impair an adequate supply of light and air to adjacent property, or increase substantially the congestion in the public street, or increase the danger of fire, or endanger the public safety.

11

Wimsatt likewise fails to allege that she has sought a variance from the BZA or that the BZA illegally denied her request for variance.

We acknowledge also that various parts of what we presume to be the administrative record are sprinkled throughout the record before this Court. To the extent that we have limited authority to consider these documents in the scope of an exception of no cause of action, *see Maw Enterprises, L.L.C.*, 14-0090, p. 7, 149 So.3d at 215, it is difficult to discern the administrative procedural history of this case, what was argued by whom, and what evidence was before the Department of Safety and Permits or the BZA. Because Wimsatt failed to allege in her second petition that she is seeking review of the BZA decision, neither that record nor the transcription of any of the proceedings was lodged in the district court or here on appeal. *See* La. R.S. 33:4727(E)(2)-(4)(providing procedure for lodging BZA record in district court).[8]

---

*O'Brien*, 15-0169, pp. 4-5, 177 So.3d at 740-41 (quoting CZO, § 14.6.4).

[8] E. … (2) Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review the decision of the board of adjustment and shall be prescribed therein the time within which a return may be made and served upon the relator's attorney, that shall be not less than ten days but which may be extended by the court. The party requesting the appeal or writ shall bear the costs of transcribing the auditory recording of the meeting in which the adverse board of adjustment decision was rendered.
(3) The board of adjustment shall not be required to return the original papers acted upon by it, but may return certified or sworn copies thereof or such portions thereof as may be called for by the writ. The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified.
(4) If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct, the cost of which shall be borne by the party who initiated the appeal, and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.

La. R.S. 33:4727(E)(2)-(4).

In summary, Wimsatt has not alleged that she seeks district court review of the BZA decision, that the BZA decision was illegal, or identified any specific grounds why the BZA decision was illegal. Considering the above, we find that Wimsatt's second petition fails to state a cause of action under which the law provides her with a remedy. As such, we reverse the district court's ruling denying the City's exception of no cause of action, and we vacate the remainder of the judgment.

"Nevertheless, where a plaintiff may be able to remove the grounds of the defendon's peremptory exception so as to properly state a cause of action, he should be afforded an opportunity to amend the petition." *Robinson v. Moises*, 14-1027, p. 6 (La. App. 4 Cir. 6/10/15), 171 So.3d 1108, 1111 (citing La. C.C.P. art. 934)(other citations omitted). "Indeed, it is mandatory that the trial judge permit an amendment of the pleadings when there is a conceivable possibility that a cause of action may yet be stated by a plaintiff." *Cooper v. Pub. Belt R.R.*, 00-0378, p. 4 (La. App. 4 Cir. 12/20/00), 776 So.2d 639, 641. While we find that the second petition with its current allegations fails to state a cause of action against the City to enjoin enforcement of the administrative judgment, we are not prepared to find as a matter of law that the basis for the objection to the petition cannot be removed by amendment. Therefore, we remand the matter to the trial court to permit Wimsatt to amend her petition to state a cause of action.[9]

---

[9] Because of our holding, we pretermit discussion of the City's remaining arguments and assignments of error. While we recognize that jurisdiction is ordinarily a "threshold" issue, *see Bordelon v. Dehnert*, 99-2625, p. 3 (La. App. 1 Cir. 9/22/00), 770 So.2d 433, 435 (citing La. C.C.P. art. 3), the City's jurisdictional arguments sound in timeliness, and this Court lacks a full record of the pertinent administrative filings and proceedings below. The City could re-urge its

Accordingly, for the reasons set forth in this opinion, we reverse the district court's denial of the City's exception of no cause of action, we vacate the remainder of the judgment, and we remand this case to the district court to permit amendment of the petition and for further proceedings consistent with this opinion.

**REVERSED IN PART; VACATED IN PART; REMANDED**

---

arguments in the district court, if desired, with the benefit of the BZA record reflecting the relevant dates, if the petition should be amended to state a cause of action.