Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,114-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

THERESA NICHOLSON,                          Plaintiffs-Appellants
JONATHAN NICHOLSON,
JOSHUA NICHOLSON, &
JACQUELYN N. SHOEMAKER

versus

STEVEN L. BROWN, KODY                       Defendants-Appellees
BROWN, KRISTOPHER BROWN,
& POVERTY POINT PRODUCE
CO.

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of West Carroll, Louisiana
Trial Court No. 31,996

Honorable Will Barham, Judge

* * * * *

HUDSON, POTTS & BERNSTEIN, LLP          Counsel for Appellants
By: Robert M. Baldwin
    G. Adam Cossey
    Jason R. Smith

OFFICES OF BRIAN CRAWFORD, LLC          Counsel for Appellees

* * * * *

Before STONE, COX, and STEPHENS, JJ.

**STEPHENS, J.,**

The instant appeal is from the trial court's adverse judgment which granted an exception of no cause of action filed by the defendants, Steven Brown and Poverty Point Produce Company. For the reasons set forth below, we reverse the trial court's judgment and remand the matter to the trial court for further proceedings.

### FACTS/PROCEDURAL BACKGROUND

This action began when the plaintiffs, Theresa Nicholson and her three children ("the Nicholsons"), owners of 50% of the shares in a small, closely held family corporation, filed suit against the owners of the remaining shares, the defendants, her brother Steven Brown and his children ("the Browns"). The Nicholsons' first petition, filed on October 5, 2020, alleged the invalidity of a "Unanimous Consent Resolution" ("UCR"), claimed a deadlock between the members of Poverty Point Produce Company ("PPP"), which would require dissolution of the company, and sought withdrawal from the corporation as "Oppressed Shareholders." Mediation was attempted with no resolution. The Nicholsons filed a "Supplemental, Amended and Restated Petition" on May 23, 2023. The defendants then filed exceptions of no cause and no right of action and vagueness to the second petition on August 22, 2023. After a hearing, the trial court ruled in favor of the defendants[1] by sustaining the exception of no cause of action and dismissing the plaintiffs' claims with prejudice without

---

[1] By this time, Brown and PPP were the only remaining defendants, his sons Kody Brown and Kristopher Brown having been dismissed by consent of the parties.

leave to amend by judgment signed on May 28, 2024, and filed on May 31, 2024. It is from this judgment that the Nicholsons have appealed.

As this is an appeal from a judgment sustaining an exception of no cause of action, the relevant facts are taken from the plaintiffs' second petition. These facts[2] are:

- Theresa Nicholson, Jonathan Nicholson, Joshua Nicholson, and Jacquelyn Shoemaker ("the Nicholsons") and Steven Brown, Kody Brown, and Kristopher Brown ("the Browns") are the sole shareholders of Poverty Point Produce Company ("PPP").

- Theresa Nicholson and Steven Brown are the directors of PPP.

- The Nicholsons own 300 shares of the Company, and the Browns own 300 shares of PPP.

- In August 2013, Theresa Nicholson and Steven Brown executed a UCR.

- In May 2014, Steven Brown, Kody Brown, and Kristopher Brown executed a UCR.

- In February 2016, all directors and shareholders of PPP executed a UCR.

- The 2014 and 2016 UCRs were substantially similar and/or identical to the 2013 UCR.

- The UCRs gave Steven Brown substantial corporate power, including those corporate powers traditionally and legally reserved for the Board of Directors.

- The sole reason the plaintiffs agreed to sign the UCRs was they were informed by Steven Brown that it was necessary to get a sweet potato purchase contract with ConAgra which was essential to the business of PPP.

- The plaintiffs "now think that the assertion by Steven L. Brown concerning the ConAgra contract" was false and the real reason for Brown to take control of the company was for his advantage and that of his family.

_____

[2] Legal theories of recovery or argument set forth in the plaintiffs' petition are omitted.

2

- The sole and only cause for the plaintiffs' execution of the agreements was the false statement that they were required to get the ConAgra contracts.

- Steven L. Brown effectively usurped the powers guaranteed to the Board of Directors via the UCRs. The UCRs limited the directors' independent responsibility for corporate management, forced the Board of Directors to abdicate its functions and fiduciary duties, and interfered with the unfettered discretion of the Board of Directors to manage the corporation as the Board saw fit.

- The UCRs do not state that they are unanimous governance agreements or that they are governed by La. R.S. 12:1-732.

- Due to the status of the directors and shareholders described above, the directors are deadlocked in voting power in the management of the corporate affairs, the shareholders are unable to break the deadlock because they are deadlocked in voting power, and the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally.

- Plaintiffs believe that discovery will also show that the shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired.

- Historically, PPP's shareholders, including the plaintiffs, collectively enjoyed shared management and oversight of PPP.

- Due to the Browns' actions, including but not necessarily limited to, coercing the plaintiffs into executing the UCRs, the Browns have seized total practical control of PPP.

- The Browns and some of the plaintiffs have historically, through 2019, enjoyed employment with PPP. However, in 2020, Steven Brown first reduced the plaintiffs' employment, then terminated it abruptly and without cause, while the Browns remained employed by PPP with "increasingly exorbitant salaries, vehicles, and fuel paid for" by PPP and other benefits of employment that are not commensurate with those benefits and salaries of previous employees of PPP, including the plaintiffs.

- The course of behavior by the Browns on behalf of PPP has been a systematic process to effectively eliminate the plaintiffs from having any control, management, oversight, or say so in PPP.

3

# DISCUSSION

## *Plaintiffs' Argument*

According to the Nicholsons, while the alleged facts are simple, the second petition specifically and clearly lays out sufficient facts that give rise to several causes of action. First, the second petition alleges that the UCRs executed by the plaintiffs are invalid because they do not comply with the statutory requirements of Louisiana law regarding Unanimous Governance Agreements ("UGA"). If the UCRs are not UGAs as alleged, they cannot, as a matter of law, act to take away the governance rights of Theresa Nicholson as a director, or any of the shareholders, urge the plaintiffs.

The plaintiffs' second petition alleges that the UCRs do not state that they are unanimous governance agreements or that they are governed by La. R.S. 12:1-732. This statute requires that either of these statements be in a UGA for it to be valid. As the Nicholsons have alleged, however, the UCRs do not do so. Clearly they have alleged a cause of action for the invalidity of the UCRs, urge the plaintiffs.

A related complaint asserted by the plaintiffs is that the trial court improperly analyzed the validity of the UCRs. First, the trial court seemingly presumed the UCRs were valid since they were not attached to the second petition, which the plaintiffs note they were not required to do. Likewise, there is no presumption that the failure to attach this document somehow leads to an adverse inference. The trial court instead should have accepted the allegations as true (since this was on an exception of no cause of action). By presuming the document was valid simply because it was not attached, this shows that the trial court failed to accept these allegations as true.

4

Next, the plaintiffs argue that the second petition sufficiently and specifically alleges facts to establish a cause of action to void the UCRs under theories of fraud and unilateral error. These are two separate and distinct vices of consent as either vitiates a party's consent. According to the plaintiffs, even if fraud was not sufficiently alleged (which they do not concede), unilateral error was.

In the second petition, the plaintiffs assert that they clearly alleged that Brown falsely represented the nature of and necessity for a UCR. They also aver that the UCRs were signed by them for one reason—because they believed it was necessary to obtain a contract with ConAgra (something they were told by Brown). Applying the law to these facts, the Nicholsons contend they have clearly alleged a cause of action for unilateral error that would vitiate their consent to the UCR.

Regarding their cause of action for fraud, the plaintiffs urge that the trial court's concern or distress over the fact that they alleged fraud was an inappropriate consideration at the hearing on the defendants' no cause of action exception. In their second petition, the plaintiffs allege that Steven Brown made false representations to them to get them to sign the UCRs because these documents were a requirement of doing business with ConAgra. Brown's intent, i.e., misrepresentation in order to induce the plaintiffs to sign the UCRs, was generally alleged.

The plaintiffs assert that even if the above allegations were insufficient to allege fraud, the trial court erred in granting the defendants' exception of no cause of action without giving proper consideration to the allegations that the UCR was invalid for failure to contain the statutorily

5

required language, which caused it to be an invalid transfer and usurpation of the traditional powers of the board of directors.

Third, the second petition alleges a cause of action for dissolution by specifically detailing how the directors of PPP are deadlocked. The pleading as amended alleges that Theresa Nicholson and Brown are the directors of PPP; that Nicholson and Brown are deadlocked in voting; and that the affairs of the corporation can no longer be conducted as a result. If the 2016 UCR is not a valid UGA as factually alleged and/or cannot usurp the power of the directors or shareholders as alleged, the voting power of the corporation is deadlocked with the Browns having 50% and the Nicholsons having 50%. This states a cause of action for dissolution under Louisiana law.

The Nicholsons further argue that the second petition alleges a cause of action for dissolution by specifically detailing how the directors are deadlocked. They have alleged that Brown excluded them from exercising any power, has reduced salaries, and has even fired some of them. The allegations further claim that Brown has prohibited the plaintiffs' participation in the business, while at the same time increasing salaries and other benefits to his family and their control of the company affairs of PPP. If true, Brown has taken over all practical control of the company. With each family having 50% of the voting shares, and Theresa Nicholson and Steven Brown being the only directors, the deadlock in voting power is clear, as is the fact that under the UCR the business of the company "can no longer be conducted to the advantage of the shareholders generally." The Nicholsons have further alleged that there have been no special or annual meetings to elect new directors since 2016 when the UCR was signed. The

6

factual allegations are clearly sufficient to state a cause of action for dissolution as a matter of law.

Fourth, the second petition specifically alleges facts that, if proven, establish that the plaintiffs are oppressed shareholders under La. R.S. 12:1-1435 and should be allowed to withdraw from PPP in exchange for the receipt of fair value of their percentage of ownership. The second petition alleges that Steven Brown: (1) systematically eliminated the Nicholsons from having any control, management, or oversight of PPP; (2) abruptly and without cause reduced their salaries while increasing the defendants' salaries; and (3) practically usurped all control from the board of directors and shareholders. As alleged oppressed shareholders, the plaintiffs claim that they gave written notice of the above to PPP and Brown of their withdrawal from PPP, thereby triggering their right to be bought out at fair value according to Louisiana law.

What the Nicholsons seek is an escape from their trapped status in PPP since 2016 and their inability to participate in its daily affairs and receive fair treatment with regard to compensation and governance. Withdrawal for oppression is simply one option, while invalidation of the UCR for the reasons stated is another. Dissolution is a final solution, urge the plaintiffs.

According to the plaintiffs, the trial court apparently found that the Nicholsons were not oppressed shareholders or that there was no vice of consent because there was no allegation that their interest in the company declined in monetary value. The plaintiffs note that there have been no claims that PPP is in any financial distress or that it is a non-viable business entity, but point out that this neither is a requirement for them to have a

cause of action against the defendants. There is no provision in Louisiana law that requires a breach of fiduciary duty or that a company be unprofitable prior to consent being vitiated or prior to there being a cause of action for an oppressed shareholder lawsuit.

The plaintiffs also argue that the trial court erroneously considered matters outside the pleadings which were totally irrelevant to the case. In a very diplomatic fashion, the plaintiffs urge that, while the trial court's comments may have been well intentioned, they show that the exception of no cause of action was not properly analyzed because the trial court's comments show that the court's inquiry went way beyond the scope of the factual allegations of the second petition and into areas which are irrelevant to the facts of the case, much less the allegations of the petition itself.

Finally, the plaintiffs urge that, even if there was a basis for the granting of the exception of no cause of action, the trial court erred in not granting leave of court for the petition's amendment pursuant to La. C.C.P. art. 934.

According to the plaintiffs, the trial court erred in giving consideration to only the allegations of fraud and error and dismissing the plaintiffs' petition with prejudice on that basis without leave to amend and, in particular, erred in dismissing the other causes of action on that basis. The Nicholsons urge this Court to reverse the judgment of the trial court and remand the matter for further proceedings.

**Defendants' Argument**

The plaintiffs have asserted two assignments of error on appeal: the trial court erred in granting the exceptions of no cause of action filed by the

defendants; and the trial court erred in not allowing the plaintiffs to amend their pleadings after the court granted the exceptions of no cause of action.

Regarding the first cause of action alleged, fraud and/or unilateral error based on Brown's alleged misrepresentation, the defendants urge that there are no facts alleged by the Nicholsons to support that it was Brown's intention, at the time of the parties' signing of the UCRs, to increase or decrease salaries of employees. The defendants point out that the plaintiffs have acknowledged that these allegations concerning employment occurred several years *later*. Likewise, the plaintiffs in their pleadings alleged that they re-executed UCRs over the years and these UCRs clearly give Brown the power to manage day-to-day affairs such as supervising employees.

As to the second cause of action alleged, invalidity of the UCRs for failure to comply with Louisiana corporate law and because of fraud, the defendants note that under La. R.S. 12:1-732, the three elements of a UGA are that it: be approved in writing and signed by all persons who are shareholders at the time of the agreement (uncontested in this case); governs the exercise of the corporate powers or the management of the business and affairs of the corporation or the relationship among the shareholders, the directors, and the corporation, or among any of them (uncontested in this case); and, states that it is a unanimous governance agreement or that it is governed by this Section (this is contested for semantic reasons only, argue the defendants). There have been insufficient facts alleged to support a cause of action for nullification of the unanimous consent resolutions/contract unless the parties entered into the agreement through fraudulent inducement, which, as argued above, the defendants assert was not properly pled.

9

The plaintiffs' third claim was that they are entitled to a judicial dissolution of PPP under La. R.S. 12:1-1430. The defendants urge that the trial court properly found that there were no allegations within the plaintiffs' petition to withstand the exceptions of no cause of action as to this claim. No allegations setting forth facts to support such a claim were made by plaintiffs in their petition, i.e., details describing the existence of the alleged "deadlocked management" or a description of an irreparable injury to the corporation or that the affairs of the corporation can no longer be conducted to the advantage of the shareholders generally.

The plaintiffs' fourth claim is one for a withdrawal from PPP as oppressed shareholders. The defendants urge the plaintiffs have failed to allege any relevant circumstances to support a claim of oppression or mistreatment.

In response to the plaintiffs' complaints that the trial court made improper comments during the court's remarks to the parties about ConAgra, the marketer of PPP's sweet potato products, Brown and PPP instead suggest that the remarks by the trial court were nothing more than comments about the practical realities of their small town's agricultural community. Those comments were not substantive in nature and had nothing to do with the issues raised and addressed in its consideration and decision of the exceptions, according to the defendants. The plaintiffs have stated no cause of action and the trial court's judgment sustaining the exceptions of no cause of action should be affirmed at the plaintiffs' costs.

*Applicable Legal Principles*

The peremptory exception of no cause of action tests the legal sufficiency of the petition by determining whether the plaintiff is afforded a

remedy in law based on the facts alleged in the pleading. *Wederstrandt v. Kol*, 22-01570 (La. 6/27/23), 366 So. 3d 47; *Kendrick v. Estate of Barre*, 21-00993 (La. 3/25/22), 339 So. 3d 615. For purposes of the exception, a cause of action is defined as the operative facts that give rise to the plaintiff's right to judicially assert that action against the defendant. In deciding an exception of no cause of action, the court is to consider the petition alone, and no evidence may be introduced to support or controvert the exception. As such, all well-pleaded allegations of fact are accepted as true. *Jameson v. Montgomery*, 22-01784 (La. 5/5/23), 366 So. 3d 1210; *Wederstrandt*, *supra*. "Well-pleaded" refers to properly pleaded allegations that conform to the system of fact pleading set forth in Louisiana's Code of Civil Procedure; it doesn't include allegations deficient in material detail, conclusory factual allegations, or allegations of law. *Id.* If there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery. In such a case, there is truly only one cause of action, and a judgment partially maintaining the exception is generally inappropriate. *Everything on Wheels Suburu, Inc. v. Suburu South, Inc.*, 616 So. 2d 1234 (La. 1993).

The burden of demonstrating that a petition fails to state a cause of action is on the mover. *State ex rel. Tureau v. BEPCO, L.P.*, 21-0856 (La. 10/21/22), 351 So. 3d 297. For purposes of the exception of no cause of action, the well-pleaded facts of the plaintiff's petition must be taken as true. *Id.* However, this review does not require a court to infer conclusions which

11

are contrary to the facts pled. *McCarthy v. Evolution Petroleum Corp.*, 14-2607 (La. 10/14/15), 180 So. 3d 252.

Because the exception of no cause of action raises a question of law based solely on the sufficiency of the petition, an exception of no cause of action should be granted only when it appears the petitioner cannot prove any set of facts which would entitle him to relief. Whether the plaintiff can successfully prove that the defendant is liable under the applicable laws in the case is a matter of proof that goes to the merits of the plaintiff's claims. *State ex rel. Tureau*, *supra*. The merits of a claim are to be determined after findings of fact, upon a motion for summary judgment, or a trial on the merits, and the plaintiff's ability to prevail on the merits, or whether the defendant has a valid defense are not appropriate considerations on an exception for no cause of action. *Id.*

The pertinent question is whether, in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf, the petition states any valid cause of action for relief. *Wederstrandt*, *supra*. A court appropriately sustains an exception of no cause of action only when, conceding the correctness of the facts, the plaintiff has not stated a claim for which he or she can receive legal redress under the applicable substantive law. *Maw Enterprises*, *L.L.C.*, *v. City of Marksville*, 14-0090 (La. 9/3/14), 149 So. 3d 210. Because a trial court's judgment on an exception of no cause of action is based solely on the sufficiency of the petition and raises a question of law, a reviewing court should conduct a *de novo* review. *Id.*

Uniform Governance Agreements which transfer and usurp the powers of a board of directors must meet technical requirements in order to be valid. Louisiana law, in particular La. R.S. 12:1-732, provides in part:

A. The term "unanimous governance agreement" means any written agreement, other than the articles of incorporation or bylaws, that satisfies all of the following criteria:

(1) is approved in one or more writings signed by all persons who are shareholders at the time of the agreement;

(2) governs the exercise of the corporate powers or the management of the business and affairs of the corporation or the relationship among the shareholders, the directors, and the corporation, or among any of them;

(3) ***states that it is a unanimous governance agreement or that it is governed by this Section***. (emphasis added).

Comment 3 to La. R.S. 12:1-732 reiterates that "an otherwise qualifying written agreement may operate as a unanimous governance agreement only if the agreement states that it is a unanimous governance agreement or that it is governed by La. R.S. 12:1-732." The Louisiana Business Corporation Act, adopted in 2014, "explicitly permits a unanimous governance agreement to govern the kinds of decisions normally left to the board, such as distribution decisions, and even allows the board of directors to be eliminated altogether. Indeed, a unanimous governance agreement can do what no other governance document can do, not even the articles of incorporation: It can override rules in the new Act that would otherwise be considered mandatory." Thus, the necessity for strict compliance with subsections (A)(1)-(3). "Unanimous governance agreements are to be enforced in accordance with the principle of freedom of contract. The only limitation imposed on this freedom is that of public policy." Glenn G. Morris, *Model Business Corporation Act as Adopted in Louisiana*, 75 La. L. Rev. 983, 1012 (2015).

La. R.S. 12:1-1430 provides for judicial dissolution of a corporation and states that a district court MAY dissolve a corporation in:

. . . .

(2) A proceeding by a shareholder if any of the following is established:

(a) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock.

(b) [Reserved.]

(c) The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired.

(d) [Reserved.]

La. R.S. 12:1-1435 governs the procedure by which an oppressed shareholder can seek withdrawal from a corporation, the requirement being that the corporation buy all of the shareholder's shares at their fair value. Subsection (D) of La. R.S. 12:1-1435 provides, "[a] shareholder may assert a right to withdraw under this Section by giving written notice to the corporation that the shareholder is withdrawing from the corporation on grounds of oppression." Subsection (B) of La. R.S. 12:1-1435 provides:

> A corporation engages in oppression of a shareholder if the corporation's distribution, compensation, governance, and other practices, considered as a whole over an appropriate period of time, are plainly incompatible with a genuine effort on the part of the corporation to deal fairly and in good faith with the shareholder. Conduct that is consistent with the good faith performance of an agreement among all shareholders is **presumed not** to be oppressive. The following factors are relevant in assessing the fairness and good faith of the corporation's practices:
>
> (1) The conduct of the shareholder alleging oppression.
>
> (2) The treatment that a reasonable shareholder would consider fair under the circumstances, considering the reasonable expectations of all shareholders in the corporation.

14

However, the statutory buyout remedy, unless the corporation chooses to dissolve, is the exclusive remedy on grounds of oppression itself. La. R.S. 12:1-1435(L).[3]

*Analysis*

The standard for granting an exception of no cause of action is not the likelihood that the plaintiffs will prevail at trial. A trial court's duty in ruling on a no cause of action exception is not to determine the ultimate merits of the case but instead, however "specious" they may appear to the trial court, to accept the factual allegations as true and ascertain whether the law extends a remedy to the plaintiffs based on the averred facts. Opposing counsel's arguments and contentions to the contrary as set forth in their pleadings, memoranda, and oral argument, this Court finds that the law does provide a remedy against these defendants in this case, if the well-pleaded allegations are borne out at trial.

**CONCLUSION**

For the reasons set forth above, the judgment of the trial court sustaining the exception of no cause of action filed by the defendants, Steven Brown and Poverty Point Produce Company, and dismissing with prejudice the claims filed by the plaintiffs, Theresa Nicholson, Jonathan Nicholson, Joshua Nicholson, and Jacquelyn Shoemaker, is reversed and the matter is remanded for further proceedings consistent with this judgment. Costs of

---

[3] We note that the commentators, in Revision Comment (c) (2014), point out that La. R.S. 12:1-1435 narrows the grounds for withdrawal from those provided in the Model Act for dissolution by providing a withdrawal method only for oppression, not for illegality, fraud, or waste. Instead, the authors point out that "[w]hile illegal, fraudulent or wasteful acts are likely to justify some form of penalty or remedy in favor of an appropriate person, they do not justify the remedy of withdrawal unless, taken as a whole and in context, they amount to oppression of the complaining shareholder."

15

this appeal are assessed to the defendants, Steven Brown and Poverty Point

Produce Company.

**REVERSED and REMANDED.**